# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

THE AMERICAN SOCIETY OF MEDIA      :
PHOTOGRAPHERS, INC., GRAPHIC ARTISTS      :
GUILD, PICTURE ARCHIVE COUNCIL OF      :      Civil Action No. 10-CV-02977 (DC)
AMERICA, INC., NORTH AMERICAN NATURE      :
PHOTOGRAPHY ASSOCIATION,      :      **ECF Case**
PROFESSIONAL PHOTOGRAPHERS OF      :
AMERICA, LEIF SKOOGFORS, AL      :
SATTERWHITE, MORTON BEEBE, ED KASHI,      :
JOHN SCHMELZER, SIMMS TABACK,      :
LELAND BOBBE, JOHN FRANCIS FICARA,      :
and DAVID W. MOSER, on behalf of themselves      :
and all others similarly situated,      :
     :
                 Plaintiffs,      :
     :
          v.      :
     :
GOOGLE, INC.,      :
     :
              Defendant.      :

------------------------------------------------------------------x

## ASSOCIATIONAL PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION OF DEFENDANT GOOGLE, INC. TO DISMISS

MISHCON DE REYA NEW YORK LLP
200 Park Avenue, 44th Floor
New York, New York 10166
Tel: (212) 612-3270
Fax: (212) 612-3297
james.mcguire@mishcon.com
mark.berube@mishcon.com
vincent.filardo@mishcon.com

*Attorneys for Lead Plaintiffs and the Prospective Class*

Legal1US.43546.9

## TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ..................................................................................... 1

II.  STATEMENT OF FACTS .......................................................................................... 2

III. ARGUMENT ................................................................................................................. 2

    A.   STANDARD OF REVIEW ................................................................................ 2

    B.   THIS COURT MAY EXERCISE ITS DISCRETION
        AND NOT EVEN CONSIDER GOOGLE'S ASSOCIATIONAL
        STANDING CHALLENGE .............................................................................. 3

    C.   COURTS HAVE REGULARLY ACKNOWLEDGED THE BENEFITS
        PROVIDED BY ASSOCIATIONAL STANDING ....................................... 5

    D.   THE ELEMENTS OF THE ASSOCIATIONAL STANDING TEST .................. 6

    E.   GOOGLE'S FLAWED INTERPRETATION OF
        THE *HUNT* TEST CONFLATES PRONGS ONE AND THREE ..................... 11

    F.   THE PRINCIPAL CASES GOOGLE RELIES UPON
        MISINTERPRET THE *HUNT* TEST AND/OR ARE
        DISTINGUISHABLE ........................................................................................ 12

        1.   The *Association for Information Media and Equipment* Case ..................... 12
        2.   The *National Association of Freelance Photographers* Case ......................... 16

    G.   THE CASES GOOGLE ATTEMPTS TO DISTINGUISH SHOW THAT
        ASSOCIATIONAL STANDING EXISTS HERE ....................................... 17

    H.   GOOGLE'S FAIR USE ARGUMENT IS ENTIRELY IRRELEVANT
        UPON THIS MOTION TO DISMISS ............................................................. 20

    I.   GOOGLE'S DISCUSSION OF THE PARTNER PROGRAM
       IS ALSO ENTIRELY IRRELEVANT UPON THIS MOTION TO DISMISS ... 23

IV.  CONCLUSION ............................................................................................................ 25

## TABLE OF AUTHORITIES

Page(s)

CASES

A&M Records, Inc. v. Napster, Inc.,
  239 F.3d 1004 (9th Cir. 2001) .................................................................. 23

Advani Enters., Inc. v. Underwriters at Lloyds,
  140 F.3d 157 (2d Cir. 1998) .................................................................... 24

Aguilar v. Immigration & Customs Enforcement Div. of the U.S. Dep't of Homeland Sec.,
  No. 07 Civ. 8224(JGK), --- F.Supp.2d ----, 2011 WL 3273160 (S.D.N.Y. Aug. 1, 2011) ................ 5

All Nations Music v. Christian Family Network, Inc.,
  989 F. Supp. 863 (W.D. Mich. 1997) ...................................................... 15

Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.,
  436 F.3d 82 (2d Cir. 2006) ...................................................................... 5

Alliance for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev.,
  651 F.3d 218 (2d Cir. 2011) ................................................................. 7, 9

Am. Booksellers Ass'n v. Houghton Mifflin Co., Inc.,
  No. 94 Civ. 8566, 1995 WL 92270 (S.D.N.Y. Mar. 3, 1995) .................... 10

Am. Geophysical Union v. Texaco, Inc.,
  60 F.3d 913 (2nd Cir. 1994) .................................................................... 20

Apple Inc. v. Psystar Corp.,
  673 F. Supp. 2d 943 (N.D. Cal. 2009) ..................................................... 15

Ass'n for Information Media & Equip. v. Regents of the Univ. of Cal.,
  No. CV 10-9378 CBM (C.D. Cal. Oct. 3, 2011) ............................. 12, 13, 14

Aurecchione v. Schoolman Transp. Sys., Inc.,
  426 F.3d 635 (2d Cir. 2005) .................................................................... 24

Authors League of Am., Inc. v. Ass'n of Am. Publishers,
  619 F. Supp. 798 (S.D.N.Y. 1985) ............................................................. 2

Baker v. Carr,
  369 U.S. 186 (1962) ................................................................................... 6

Bano v. Union Carbide Corp.,
  361 F.3d 696 (2d Cir. 2004) ...................................................................... 9

Baraban v. Time Warner, Inc.,
   No. 99 Civ. 1569(JSM), 2000 WL 358375 (S.D.N.Y. Apr. 6, 2000) .................... 21

Bateman v. Mnemonics, Inc.,
   79 F.3d 1532 (11th Cir. 1996) ................................................................................. 20

Bldg. & Constr. Trades Council of Buffalo, New York & Vicinity v. Downtown Dev., Inc.,
   448 F.3d 138 (2d Cir. 2006) ............................................................................... passim

Bouchat v. Baltimore Ravens Ltd. P'ship,
   619 F.3d 301 (4th Cir. 2010) .................................................................................. 22

Campbell v. Acuff-Rose Music Inc.,
   510 U.S. 569 (1994) ................................................................................................. 22

Canopy Music Inc. v. Harbor Cities Broad., Inc.,
   950 F. Supp. 913 (E.D. Wis. 1997) ........................................................................ 15

Capital Area Immigrants' Rights Coalition v. U.S. Dep't of Justice,
   264 F. Supp. 2d 14 (D.D.C. 2003) ........................................................................... 3

CBS Broadcasting, Inc. v. Echostar Communications Corp.,
   450 F.3d 505 (11th Cir. 2006) ................................................................................ 19

CBS, Inc. v. Primetime 24 Joint Venture,
   76 F. Supp. 2d 1333 (S.D. Fla. 1998) ...................................................................... 3

Columbia Pictures Indus., Inc. v. Fung, No. CV 06-5578 SVW (JCx), 2010 U.S. Dist. LEXIS
   91169 (C.D. Cal. May 20, 2010) ............................................................................ 15

Comer v. Cisneros,
   37 F.3d 775 (2d Cir. 1994) ....................................................................................... 4

Common Cause of Pa. v. Pennsylvania,
   558 F.3d 249 (3d Cir. 2009) ..................................................................................... 3

Controversy Music v. Down Under Pub Tyler, Inc.,
   488 F. Supp. 2d 572 (E.D. Tex. 2007) ................................................................... 15

Cortner v. Israel,
   732 F.2d 267 (2d Cir. 1984) ................................................................................... 24

E. Paralyzed Veterans Ass'n, Inc. v. Lazarus-Burman Assocs.,
   133 F. Supp. 2d 203 (E.D.N.Y. 2001) ............................................................... 3, 24

EMI April Music Inc. v. Jet Rumeurs, Inc.,
   632 F. Supp. 2d 619 (N.D. Tex. 2008) .................................................................. 14

EMI April Music Inc. v. Know Group, LLC,
    No. 3:05-CV-1870-M, 2006 WL 3203276 (N.D. Tex. Nov. 6, 2006) ................................. 15

Franklin Elec. Publishers, Inc. v. Unisonic Prods. Corp.,
    763 F. Supp. 1 (S.D.N.Y. 1991) .................................................................................. 14

Goto.com, Inc. v. Walt Disney Co.,
    202 F.3d 1199 (9th Cir. 2000), *vacated in part on other grounds*, 555 U.S. 7 (2008) ............................. 15

Graham Hanson Design LLC v. 511 9th LLC,
    No. 10 Civ. 5493(KMW), 2011 WL 744801 (S.D.N.Y. Feb. 24, 2011) ........................... 23

Harlem Valley Transp. Ass'n v. Stafford,
    360 F. Supp. 1057 (S.D.N.Y. 1973) ............................................................................. 6

Harris v. Simon & Schuster, Inc.,
    646 F. Supp. 2d 622 (S.D.N.Y. 2009) ........................................................................ 24

Hosp. Council of Western Pa. v. City of Pittsburgh,
    949 F.2d 83 (3d Cir. 1991) (Alito, J.) ..................................................................... 2, 9

Hunt v. Wash. State Apple Adver. Comm'n,
    432 U.S. 333 (1977) ..................................................................................... passim

In re Literary Works in Elec. Databases Copyright Litig.,
    654 F.3d 242 (2d Cir. 2011) .................................................................................... 19

In re Senior Cottages of Am., LLC,
    482 F.3d 997 (8th Cir. 2007) ................................................................................... 20

Infinity Broad. Corp. v. Kirkwood,
    150 F.3d 104 (2d Cir. 1998) .................................................................................... 20

Int'l Union, United Auto., Aerospace & Agricultural Implement Workers of Am. v. Brock,
    477 U.S. 274 (1986) ................................................................................................. 5

Itar-Tass Russian News Agency v. Russian Kurier, Inc.,
    153 F.3d 82 (2d Cir. 1998) ...................................................................................... 19

Itar-Tass Russian News Agency v. Russian Kurier, Inc.,
    886 F. Supp. 1120 (S.D.N.Y. 1995) ......................................................................... 22

Itar-Tass Russian News Agency v. Russian Kurier, Inc.,
    No. 95 Civ. 2144(JGK), 1997 WL 109481 (S.D.N.Y. Mar. 10, 1997), *rev'd in part*, 153
    F.3d 82 (2d Cir. 1998) ............................................................................. 17, 18, 19

J.D. Salinger v. Colting,
    641 F. Supp. 2d 250 (S.D.N.Y. 2009), *vacated on other grounds*, 607 F.3d 68 (2d Cir. 2010) ............ 22

JMV Music, Inc. v. Cochran,
   No. 00-4094-SAC, 2000 WL 1863478 (D. Kan. Nov. 16, 2000).......................................15

Joint Anti-Fascist Refugee Comm. v. McGrath,
   341 U.S. 123 (1951) ...................................................................................................... 5

K-Beech, Inc. v. Does 1-29,
   No. CV 11-3331(JTB)(ETB), 2011 WL 4401933 (E.D.N.Y. Sept. 19, 2011)......................... 14

Kelly v. Arriba Soft Corp.,
   336 F.3d 811 (9th Cir. 2003) ...........................................................................................21

Leadsinger, Inc. v. BMG Music Publ'g,
   512 F.3d 522 (9th Cir. 2008) ...........................................................................................22

Leighton Techs. LLC v. Oberthur Card Sys., S.A.,
   531 F. Supp. 2d 591 (S.D.N.Y. 2008) ................................................................................ 5

Livestock Mktg. Ass'n v. U.S. Dep't of Agric., 207 F. Supp. 2d 992, 997 (D.S.D. 2002), *aff'g on other grounds*, 335 F.3d 711 (8th Cir. 2003), *rev'd on other grounds*, 544 U.S. 550 (2005) ................. 3

M. Shanken Comm'ns, Inc. v. Cigar500.com,
   No. 07 Civ. 7371(JGK), 2008 WL 2696168 (S.D.N.Y. July 7, 2008).....................................21

Music v. Heiman,
   No. 09-cv-341-bbc, 2010 WL 1904341 (W.D. Wis. May 11, 2010) ..................................... 14

N.Y. City Employee's Ret. Sys. v. SEC,
   843 F. Supp. 858 (S.D.N.Y. 1994), *rev'd in part on other grounds*, 45 F.3d 7 (2d Cir. 1995) ................. 4

NAACP v. Alabama,
   357 U.S. 449 (1958) ...................................................................................................... 5

Nat'l Ass'n College Bookstores, Inc. v. Cambridge Univ. Press,
   990 F. Supp. 245 (S.D.N.Y. 1997) ...................................................................................10

Nat'l Ass'n of Freelance Photographers v. Associated Press,
   No. 97 Civ. 2267(DLC), 1997 WL 759456 (S.D.N.Y. Dec. 10, 1997)................................. 16, 17, 18

Nat'l Ass'n of Letter Carriers, AFL-CIO v. USPS,
   604 F. Supp. 2d 665 (S.D.N.Y. 2009) (Chin, J.).............................................8, 10, 12, 20, 24

Nat'l Collegiate Athletic Ass'n v. Califano,
   622 F.2d 1382 (10th Cir. 1980) ........................................................................................ 9

Nat'l Franchisee Ass'n v. Burger King Corp.,
   715 F. Supp. 2d 1232 (S.D. Fla. 2010) .............................................................................. 9

Olan Mills, Inc. v. Linn Photo Co.,
      23 F.3d 1345 (8th Cir. 1994) ..................................................................................15, 19

Olan Mills, Inc. v. Linn Photo Co.,
      795 F. Supp. 1423 (N.D. Iowa 1991), *rev'd*, 23 F.3d 1345 (8th Cir. 1994) ........................ 19

Oregon v. Heavy Vehicle Elec. License Plate, Inc.,
      157 F. Supp. 2d 1158 (D. Ore. 2001) .................................................................... 20

Perfect 10, Inc. v. Amazon.com, Inc.,
      508 F.3d 1146 (9th Cir. 2007) .............................................................................15, 21

Princeton Univ. Press v. Mich. Document Servs.,
      99 F.3d 1381 (6th Cir. 1996) ................................................................................. 15

Psihoyos v. Nat'l Exam'r,
      No. 97 Civ. 7624(JSM), 1998 WL 336655 (S.D.N.Y. June 22, 1998) ..........................21, 22

Public Citizen, Inc. v. Miller,
      813 F. Supp. 821 (N.D. Ga. 1993) .......................................................................... 3

Rent Stabilization Ass'n of City of New York v. Dinkins,
      5 F.3d 591 (2d Cir. 1993) ......................................................................................... 9

Robinson v. Random House, Inc.,
      877 F. Supp. 830 (S.D.N.Y. 1995) ...................................................................... 22

South Fork Band v. U.S. Dep't of Interior,
      643 F. Supp. 2d 1192 (D. Nev. 2009), *rev'd in part on other grounds*, 588 F.3d 718 (9th Cir.
      2009) ....................................................................................................................... 3

Stauber v. City of N.Y.,
      No. 03 Civ. 9162(RWS), 03 Civ. 9163(RWS), 03 Civ. 9164(RWS), 2004 WL 1593870
      (S.D.N.Y. July 19, 2004) ......................................................................................... 4

The Author's Guild v. Google, Inc.,
      No. 05 CV 8136 (S.D.N.Y. filed Sept. 20, 2005) .............................................. 4, 5

The Bridgeman Art Library, Ltd. v. Corel Corp.,
      36 F. Supp. 2d 191 (S.D.N.Y. 1999) ..................................................................... 21

The Center for Reproductive Law & Policy v. Bush,
      304 F.3d 183 (2d Cir. 2002) ................................................................................... 7

Triad Sys. Corp. v. Se. Express Co.,
      64 F.3d 1330 (9th Cir. 1995), *superseded in part on other grounds by statute* ........................... 15

U.S. v. All Funds On Deposit At: Citigroup Smith Barney Account No. 600-00338,
      617 F. Supp. 2d 103 (E.D.N.Y. 2007) ...............................................................3, 11

UMG Recordings, Inc. v. MP3.com, Inc.,
    92 F. Supp. 2d 349 (S.D.N.Y. 2000) ................................................................. 23

United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.,
    517 U.S. 544 (1996) ........................................................................................... 7

Utah v. Babbitt,
    137 F.3d 1193 (10th Cir. 1998) ......................................................................... 3

Village of Arlington Heights v. Metro. Hous. Dev. Corp.,
    429 U.S. 252 (1977) ........................................................................................... 4

W. Va. Ass'n of Cmty. Health Ctrs., Inc. v. Heckler,
    734 F.2d 1570 (D.C. Cir. 1984) ........................................................................ 2

Warner Bros. Entm't Inc. v. Carsagno,
    No. 06 CV 2676(NG)(RLM), 2007 WL 1655666 (E.D.N.Y. June 4, 2007) .................... 15

Warth v. Seldin,
    422 U.S. 490 (1975) ...................................................................................passim

Western Land Exch. Project v. U.S. Bureau of Land Mgmt.,
    315 F. Supp. 2d 1068 (D. Nev. 2004) ................................................................ 3

Wiwa v. Royal Dutch Petroleum, Co.,
    626 F. Supp. 2d 377 (S.D.N.Y. 2009) ............................................................... 5

Yurman Design, Inc. v. Golden Treasure Imports, Inc.,
    275 F. Supp. 2d 506 (S.D.N.Y. 2003) ............................................................. 22

Yurman Studio, Inc. v. Castaneda,
    591 F. Supp. 2d 471 (S.D.N.Y. 2008) ............................................................. 22

**STATUTES**

17 U.S.C. § 117(c) ..................................................................................................... 15

17 U.S.C. § 501(b) ................................................................................................11, 24

17 U.S.C. § 502(a) ..................................................................................................... 15

28 U.S.C. § 1653 ........................................................................................................ 24

**OTHER AUTHORITIES**

H.R. REP. NO. 94-1476 (1976) ................................................................................... 23

2 Moore's Fed. Prac. § 12.30[4] (Matthew Bender 3d ed. 2010) ............................. 3

2 Patry on Copyright § 5:118 (2011) ........................................................................ 23

4 Patry on Copyright § 10:9.50 (2011) ........................................................................................... 19

6 Patry on Copyright § 21.25 (2011) .............................................................................................. 24

Affidavit of Daniel Clancy, Engineering Director of Google Book Search, sworn to February 11, 2010, <u>The Author's Guild v. Google, Inc.</u>, No. 05 CV 8136 (S.D.N.Y. filed Sept. 20, 2005) (Doc. No. 946) ........................................................................................................ 16, 18

The American Society of Media Photographers, Inc., Graphic Artists Guild, Inc., Picture

Archive Council of America, Inc., North American Nature Photography Association, and

Professional Photographers of America (collectively, "Associational Plaintiffs") respectfully submit

this Memorandum of Law, along with the Declarations of Jerry Monkman, dated January 23, 2012,

Sonia Wasco, dated January 20, 2012, Eugene Mopsik, dated February 1, 2012, Michael Hays, dated

January 26, 2012, and Bruce Muncy, dated February 3, 2012 (collectively, "Declarations"), in

opposition to the Motion to Dismiss ("Motion") of defendant Google, Inc. ("Google").[1]

## I
## PRELIMINARY STATEMENT

Google's Motion is but a thinly veiled attack on the propriety of this as a representative

action, whether on an associational or class basis.  Google contends that each individual graphic

work it has infringed must be separately analyzed, including as to the affirmative defense of fair use,

and that this point precludes representative standing.  As demonstrated below, Google is incorrect.

Moreover, its position is particularly incongruous, given that Google has copied and distributed

plaintiffs' works en masse without performing the individualized analysis it now avers is required.

Indeed, Google's consistent position to date has been that its actions are categorically protected as

fair use irrespective of the individual work at issue.

Google concedes that the Associational Plaintiffs possess Article III standing, only

challenging standing on grounds of administrative convenience and efficiency.  These same

Associational Plaintiffs have participated in the Action for its near two (2) year life span, and it

cannot be demonstrated that their continued participation would result in any administrative burden.

To the contrary, their participation ensures the cohesive voice and institutional expertise necessary

to confront Google's blatant and pervasive copyright infringement.  Indeed, it would be an extreme

---

[1] The Associational Plaintiffs also join in the Memorandum of Law submitted by The Authors Guild, Inc. in opposition to Google's Motion.

perversion of justice if graphic artists were unable to obtain collective redress for Google's wholesale infringement, because they would be relegated to individual lawsuits that they could not independently prosecute and finance.

## II
## STATEMENT OF FACTS

The Associational Plaintiffs respectfully refer this Court to the First Amended Class Action Complaint, filed November 18, 2011 (Doc. No. 29) ("Complaint"), and Declarations for a statement of the facts pertinent to the Motion.

## III
## ARGUMENT

### A.   STANDARD OF REVIEW

Google asserts that the Court should construe all ambiguities and draw all inferences in plaintiffs' favor, but not attach any presumption of truthfulness to the Complaint's jurisdictional allegations.  Def. Mem. at 3-4.  However, the cases upon which Google primarily relies concern questions of individual -- not associational -- standing, as here.

In the associational standing context, the case law overwhelmingly establishes that "on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."  Warth v. Seldin, 422 U.S. 490, 501 (1975); Authors League of Am., Inc. v. Ass'n of Am. Publishers, 619 F. Supp. 798, 805 (S.D.N.Y. 1985) (same); Hosp. Council of Western Pa. v. City of Pittsburgh, 949 F.2d 83, 86 (3d Cir. 1991) (Alito, J.) (reversing dismissal of complaint for lack of associational standing and holding under proper Warth standard complaint should not have been dismissed); W. Va. Ass'n of Cmty. Health Ctrs., Inc. v. Heckler, 734 F.2d 1570, 1574 n.5 (D.C. Cir.

1984) (applying <u>Warth</u> standard); <u>E. Paralyzed Veterans Ass'n, Inc. v. Lazarus-Burman Assocs.</u>, 133 F. Supp. 2d 203, 208 (E.D.N.Y. 2001) (same).[2]

## B.    THIS COURT MAY EXERCISE ITS DISCRETION AND NOT EVEN CONSIDER GOOGLE'S ASSOCIATIONAL STANDING CHALLENGE.

It is well settled nationwide that where at least one plaintiff has satisfied the constitutional and prudential standing requirements to bring a claim, a Court need not consider whether other named plaintiffs also have standing. <u>Utah v. Babbitt</u>, 137 F.3d 1193, 1216 n.36 (10th Cir. 1998) (since Court concluded one plaintiff had standing, "we need not consider whether the other two Plaintiffs [one of which was an association] would also have standing to bring the claim"); <u>South Fork Band v. U.S. Dep't of Interior</u>, 643 F. Supp. 2d 1192, 1206 (D. Nev. 2009), <i>rev'd in part on other grounds</i>, 588 F.3d 718 (9th Cir. 2009) (expressing doubt as to whether associational co-plaintiff possessed standing but concluding because at least one other co-plaintiff had standing, Court need not decide question); <u>Western Land Exch. Project v. U.S. Bureau of Land Mgmt.</u>, 315 F. Supp. 2d 1068, 1081 (D. Nev. 2004) (because one associational co-plaintiff "has standing to bring this case . . . the court need not inquire as to the standing of the other plaintiffs"); <u>Capital Area Immigrants' Rights Coalition v. U.S. Dep't of Justice</u>, 264 F. Supp. 2d 14, 22 n.7 (D.D.C. 2003) (same); <u>CBS, Inc. v. Primetime 24 Joint Venture</u>, 76 F. Supp. 2d 1333, 1337 (S.D. Fla. 1998) (same); <u>Public Citizen, Inc. v. Miller</u>, 813 F. Supp. 821, 827 (N.D. Ga. 1993) (same); <u>Livestock Mktg. Ass'n v. U.S. Dep't of Agric.</u>, 207 F. Supp. 2d 992, 997 (D.S.D. 2002), <i>aff'g on other grounds</i>, 335 F.3d 711 (8th Cir. 2003), <i>rev'd on other grounds</i>, 544 U.S. 550 (2005) (describing parties' attempts to establish and attack

---

[2] Moreover, Google is asserting that the Associational Plaintiffs do not have standing "as a matter of law," and that Plaintiffs "fail to plead facts showing that the associations have standing to bring these copyright claims." Def. Mem. at pp. 19, 1.  Otherwise put, Google is asserting that, taking the Complaint's allegations as pleaded, the Associational Plaintiffs do not have standing.  In such premises, the Court must apply the <u>Warth</u> standard.  <u>U.S. v. All Funds On Deposit At: Citigroup Smith Barney Account No. 600-00338</u>, 617 F. Supp. 2d 103, 112-13 (E.D.N.Y. 2007) ("If the defendant challenges only the legal sufficiency of the plaintiff's jurisdictional allegations, the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff.") (quotation omitted); <u>Bldg. & Constr. Trades Council of Buffalo, New York & Vicinity v. Downtown Dev., Inc.</u>, 448 F.3d 138, 144 (2d Cir. 2006) (same); <u>Common Cause of Pa. v. Pennsylvania</u>, 558 F.3d 249, 257 (3d Cir. 2009) (same); 2 Moore's Fed. Prac. § 12.30[4] (Matthew Bender 3d ed. 2010) (same).

associational standing of co-plaintiffs as "much ado about nothing since it is clear that . . . [the] individual plaintiffs have standing"); see also Village of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 264 & n.9 (1977) ("Because of the presence of this plaintiff [who has standing], we need not consider whether the other individual and corporate plaintiffs have standing to maintain this suit").

This is unquestionably the law in this Circuit and Court. Comer v. Cisneros, 37 F.3d 775, 788 (2d Cir. 1994) ("For federal courts to have jurisdiction over any of [plaintiff's claims], only one named plaintiff need have standing with respect to each claim"); Stauber v. City of N.Y., No. 03 Civ. 9162(RWS), 03 Civ. 9163(RWS), 03 Civ. 9164(RWS), 2004 WL 1593870, *17 (S.D.N.Y. July 19, 2004) (refraining from addressing standing issue with respect to co-plaintiffs for claims upon which at least one plaintiff already found to have standing); N.Y. City Employee's Ret. Sys. v. SEC, 843 F. Supp. 858, 871 n.20 (S.D.N.Y. 1994), *rev'd in part on other grounds*, 45 F.3d 7 (2d Cir. 1995) (same).

Here, there is no question that the individual named plaintiffs have standing to bring (and, in actuality, do bring) the same claims and seek the same relief being sought by the Associational Plaintiffs. Compl. ¶¶ 68-86. Google concedes this fact and offers no argument to the contrary. Thus, because at least one other plaintiff has standing to bring the claims at issue, it is not necessary for the Court to address the issue of associational standing.

Moreover, there are two further and independent reasons why the Court should exercise this discretion and not address the Associational Plaintiffs' standing. First, regardless of the outcome of Google's motion, this case will proceed. Whether or not the Associational Plaintiffs are involved, and whether or not this case proceeds as a class action, there will be individual plaintiffs proceeding to the merits. As a result, addressing the standing of the Associational Plaintiffs is wholly unnecessary. Second, the Associational Plaintiffs here have already been involved in this case for nearly two (2) years without challenge. And, in the related Author's Guild case, The Author's Guild

v. Google, Inc., No. 05 CV 8136 (S.D.N.Y. filed Sept. 20, 2005), the associational plaintiff has been

involved for over six (6) years without challenge.  It is hard to fathom how their continued

participation would occasion any prejudice.[3]

## C.   COURTS HAVE REGULARLY ACKNOWLEDGED THE BENEFITS PROVIDED BY ASSOCIATIONAL STANDING.

While associational standing is an exception to the traditional requirement that a plaintiff be

directly aggrieved, its place in standing jurisprudence is firmly entrenched.  To be sure, Courts

routinely emphasize the importance of associational standing in ensuring that individual members'

claims are fully and efficiently litigated:

> [A]n association suing to vindicate the interests of its members can draw upon a pre-existing reservoir of expertise and capital.  Besides financial resources, organizations often have specialized expertise and research resources relating to the subject matter of the lawsuit that individual plaintiffs lack.  These resources can assist both courts and plaintiffs.  ***  In addition, the doctrine of associational standing recognizes that the primary reason people join an organization is often to create an effective vehicle for vindicating interests that they share with others.

Int'l Union, United Auto., Aerospace & Agricultural Implement Workers of Am. v. Brock, 477 U.S.

274, 289-90 (1986) (internal citations and quotations omitted).  See also NAACP v. Alabama, 357

U.S. 449, 459 (1958) (association "is but the medium through which its individual members seek to

make more effective the expression of their own views."); Joint Anti-Fascist Refugee Comm. v.

McGrath, 341 U.S. 123, 187 (1951) ("The only practical judicial policy when people pool their

---

[3] Should the Court find it necessary to address the Associational Plaintiffs' standing, it still does not need to make such a determination at this early juncture in the case. Although the jurisdictional question of standing is normally decided before reaching the merits of a case, this rule is not without exception. "Where an issue of standing is so closely related to, if not inextricably entwined with, an issue on the merits, district courts have some leeway as to the procedure it wishes to follow." Leighton Techs. LLC v. Oberthur Card Sys., S.A., 531 F. Supp. 2d 591, 594 (S.D.N.Y. 2008) (quotation omitted) (finding jurisdictional issue intertwined with merits and leaving standing determination for trial); see also Wiwa v. Royal Dutch Petroleum, Co., 626 F. Supp. 2d 377, 388-89 (S.D.N.Y. 2009) (same). Specifically, the Court may allow for jurisdictional discovery, conduct a hearing, make preliminary findings subject to later revision, or defer resolving the issue entirely until the close of evidence at trial. Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 88 (2d Cir. 2006) (setting forth options District Court may pursue); Aguilar v. Immigration & Customs Enforcement Div. of the U.S. Dep't of Homeland Sec., No. 07 Civ. 8224(JGK), --- F.Supp.2d ----, 2011 WL 3273160, *17 (S.D.N.Y. Aug. 1, 2011) (setting forth options District Court may pursue, intertwining of jurisdictional question and facts made determination of standing on motion to dismiss premature). Indeed, Google's argument here presupposes (without any evidence) numerous factual issues tied to the merits of the instant dispute.

capital, their interests, or their activities under a name and form that will identify collective interests, often is to permit the association or corporation in a single case to vindicate the interests of all."); Harlem Valley Transp. Ass'n v. Stafford, 360 F. Supp. 1057, 1065 (S.D.N.Y. 1973) ("In sum, the interest and expertise of [the associational] plaintiff, when exerted on behalf of its directly affected members, assure 'that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult . . . questions.'") (quoting Baker v. Carr, 369 U.S. 186, 204 (1962)).

This underlying policy in favor of associational standing is fully implicated -- and under attack by Google -- here.  The Associational Plaintiffs here have as one of their core missions and directives the promotion of the collective interest of their members in safeguarding their works and the copyrights thereto.  They provide a unified voice for their memberships on this critical issue. Compl. ¶¶ 16-21.  Google admits as much by not even challenging associational standing here under the second prong of the Hunt test -- whether "the interests [the association] seeks to protect are germane to the organization's purpose."  Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977).

## D.   THE ELEMENTS OF THE ASSOCIATIONAL STANDING TEST

As most concisely set forth in Hunt, "an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  Id.

The first prong is satisfied where one member of the association has standing to sue in his or her own right.  Warth, 422 U.S. at 511 ("The association must allege that its members, *or any one of them*, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit.") (emphasis supplied);

United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc., 517 U.S. 544, 555 (1996) ("require[es] an organization suing as representative to include *at least one* member with standing to present, in his or her own right, the claim (or the type of claim) pleaded by the association.") (emphasis supplied); Alliance for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev., 651 F.3d 218, 228 (2d Cir. 2011) ("*at least one* of the association's members would otherwise have standing to sue in its own right") (emphasis supplied); Bldg. & Constr. Trades Council of Buffalo, New York & Vicinity v. Downtown Dev., Inc., 448 F.3d 138, 145 (2d Cir. 2006) ("An association bringing suit on behalf of its members must allege that *one or more* of its members has suffered a concrete and particularized injury . . . .") (emphasis supplied).  As it must, Google here concedes that this prong is satisfied.

The second prong, as discussed briefly above, is satisfied where there is alignment between an association's purpose and the interest it seeks to protect in the litigation.  Such alignment is unquestionably present here, and, again, Google concedes as much.

Finally, the third prong -- the sole prong upon which Google bases its motion -- which inquires as to whether the participation of the individual members of the association is necessary, is not designed to ensure constitutional standing but is entirely prudential and focused on efficient case management, subject to a District Court's discretion in applying it.  United Food, 517 U.S. at 557 ("the third prong of the associational standing test is best seen as focusing on these matters of administrative convenience and efficiency, not on elements of a case or controversy within the meaning of the Constitution."); Alliance for Open Soc'y Int'l, 651 F.3d at 229 ("As an initial matter, the third prong of the associational standing test is prudential, not constitutional, and is best seen as focusing on . . . matters of administrative convenience and efficiency . . . Accordingly, district courts possess a degree of discretion in applying it.") (internal citations and quotations omitted); The Center for Reproductive Law & Policy v. Bush, 304 F.3d 183, 196 (2d Cir. 2002) ("the prudential

requirements of standing have been developed by the Supreme Court on its own accord and applied

in a more discretionary fashion as rules of judicial self-restraint . . . .") (internal citations and

quotations omitted).  This Court itself has written on the point, as follows:

> The third prong of the *Hunt* test is a prudential consideration, not a constitutional
> requirement . . . In some cases, competing considerations outweigh any prudential
> rationale against representational standing – for example, where practical obstacles
> prevent a party from asserting rights on its own behalf.

Nat'l Ass'n of Letter Carriers, AFL-CIO v. USPS, 604 F. Supp. 2d 665, 669-70 (S.D.N.Y. 2009)

(Chin, J.) (internal citations and quotations omitted).

This Action is a prototype of such a case, as it would be cost-prohibitive for the individual

members here to individually prosecute suits against Google.  Moreover, permitting the

Associational Plaintiffs to represent the interests of their members would eliminate the need for the

Court to hear tens of thousands of substantially similar -- if not identical -- claims of copyright

infringement.  Far from occasioning administrative difficulties, the Associational Plaintiffs'

participation would further the interests of judicial economy.

Additionally, the focus of this third prong is whether the remedy sought by the associational

plaintiff requires the participation of its members.  Individual participation is typically deemed

necessary where the association seeks damages on behalf of its membership.  The Associational

Plaintiffs do not seek damages on behalf of their memberships here.  Compl. at ¶¶ 68-86.  Where, as

here, the relief the association seeks is entirely prospective, it is presumed that the participation of

individual members is not required.  Warth, 422 U.S. at 515 ("But, apart from this, whether an

association has standing to invoke the court's remedial powers on behalf of its members depends in

substantial measure on the nature of the relief sought.  If in a proper case the association seeks a

declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that

the remedy, if granted, will inure to the benefit of those members of the association actually injured.

Indeed, in all cases in which we have expressly recognized standing in associations to represent their

members, the relief sought has been of this kind."); <u>Bldg. & Constr. Trades Council</u>, 448 F.3d at 150

("the third prong of <u>Hunt</u> concerns claims that would require individualized proof, such as claims

for damages . . . . Here, because the [association] seeks civil penalties and injunctive relief only, not

money damages, its claims do not require individualized proof. The third prong of the <u>Hunt</u> test for

associational standing is therefore also clearly satisfied.") (internal citations and quotations omitted);

<u>Nat'l Collegiate Athletic Ass'n v. Califano</u>, 622 F.2d 1382, 1392 (10th Cir. 1980) ("No damages are

sought for the individual members. The [association] asks for declaratory and injunctive relief, and it

can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members

of the association actually injured.") (internal quotations omitted).[4]

    Finally, <u>Hunt's</u> third prong is only violated where the individual participation of each and

every member is required. <u>Warth</u>, 422 U.S. at 511 ("so long as the nature of the claim and of the

relief sought does not make the individual participation *of each injured party indispensible to proper*

*resolution of the cause*, the association may be an appropriate representative of its members, entitled to

invoke the court's jurisdiction.") (emphasis supplied); <u>Hosp. Council of Western Pa.</u>, 949 F.2d at 90

(Alito, J.) ("since participation by 'each [allegedly] injured party' would not be necessary, we see no

ground for denying associational standing."); <u>Nat'l Franchisee Ass'n v. Burger King Corp.</u>, 715 F.

Supp. 2d 1232, 1239 (S.D. Fla. 2010) ("Only where the individual participation *of each injured party [is]*

*indispensible to proper resolution of the case*, will the third <u>Hunt</u> requirement be violated.") (internal

citations and quotations omitted) (emphasis supplied). Where the individual participation of each

member is not necessary, allowing an association to advance claims is often the most efficient way to

proceed, as is the case here. <u>Alliance for Open Soc'y Int'l</u>, 651 F.3d at 229 (while limited

participation possibly necessary, "individualized evidence of members' efforts to comply with the

---

[4] <u>But see</u> <u>Bano v. Union Carbide Corp.</u>, 361 F.3d 696, 714-16 (2d Cir. 2004) (finding association lacked standing because damages/remediation sought required participation of individual members); <u>Rent Stabilization Ass'n of City of New York v. Dinkins</u>, 5 F.3d 591, 596 (2d Cir. 1993) (finding association lacked standing because takings analysis required quasi-damages determination and participation of individual members).

Guidelines would be duplicative and redundant[,] counsel[ing] in favor of granting associational standing in the interests of judicial economy.") (internal citations and quotations omitted); Nat'l Ass'n of Letter Carriers, 604 F. Supp. 2d at 670 (Chin, J.) (at minimum, limited individualized proof and participation permissible without violating Hunt's third prong; members' claims properly evaluated on categorical basis after limited individualized proof); Nat'l Ass'n College Bookstores, Inc. v. Cambridge Univ. Press, 990 F. Supp. 245, 250 (S.D.N.Y. 1997) ("The fact that a limited amount of individualized proof may be necessary does not in itself preclude associational standing . . . Especially in light of the alternative - requiring duplicative proof of contemporaneous transactions from each and every [association] member - there is no question that associational representation will better facilitate fair and efficient adjudication of these elements of the plaintiffs' claim."); Am. Booksellers Ass'n v. Houghton Mifflin Co., Inc., No. 94 Civ. 8566; 1995 WL 92270 at *5 (S.D.N.Y. Mar. 3, 1995) ("To enjoin unlawful practices, it is not necessary for the ABA to show impact on each and every independent bookstore member.  It is enough that the ABA prove . . . violations and the impact those violations have had on at least some independent bookstores.  At some point, the proof of impact will become redundant.  The Court can see no reason why proof of each and every impact is required to enjoin unlawful practices."); see also Hunt, 432 U.S. at 343-44 (finding apple growers association possessed standing, notwithstanding disparate injuries suffered by individual growers).

As noted above, Google concedes that prongs one and two have been satisfied here.  In fact, the Declarations submitted in conjunction with this Opposition Memorandum foreclose any such issue.  Moreover, plaintiffs have sufficiently alleged that all three prongs are met.  Compl. at 16-40. The Associational Plaintiffs submit that, under the standard governing this Motion, nothing more is required.  Accordingly, Google's motion must be denied.

### E.   GOOGLE'S FLAWED INTERPRETATION OF THE *HUNT* TEST CONFLATES PRONGS ONE AND THREE.

In raising its challenge under the third prong of Hunt, Google asserts that "a claim is being made about use of a wide variety of copyrighted works -- and, for each such work, *proof of copyright ownership by an individual member* of one of the associations would have to be provided." Def. Mem. at 11 (emphasis supplied). Google further contends that to satisfy the third prong an association "would have to identify *each* work at issue, trace the train of title of its copyright, present a registration for that copyright, and show that the owner of the copyright at the time of the alleged infringement was a member of [the association]." Id. (emphasis supplied). Google is mistaken.

First, the sort of individual proof Google contends is required is the focus of prong one, not prong three. Prong one of the Hunt test is concerned with the threshold issues of constitutional standing and ownership. Section 501(b) of the Copyright Act confers individual standing on "[t]he legal or beneficial owner of an exclusive right under a copyright . . . ." 17 U.S.C. § 501(b). Yet, under the first prong of Hunt as demonstrated above, just one member of an association needs to possess such individual and separate standing, not every member. See *supra* at 6-7. Google is attempting to rewrite Hunt to require all associational members to satisfy this threshold first prong, constitutional standing requirement.

For example, in Building & Constr. Trades Council, 448 F.3d at 143-44, a labor association sued to enjoin continuing acts of environmental contamination pursuant to a number of federal statutes. In analyzing the association's standing under Hunt, the Second Circuit could have required that each member of the association individually establish that he or she was in proximity to and exposed to pollutants but did no such thing. The panel held that the association had standing under Hunt based upon the association's general allegations of exposure of some of its members to pollutants. Id. at 146. Indeed, the Second Circuit so held even though the association had not even

identified any of its members. Id. at 145. The Court did so because there is no requirement that each individual member demonstrate standing under Hunt, as Google would have this Court erroneously believe.

At bottom, Google's rewriting of the associational standing test would eliminate associational standing altogether. If each association member was required to demonstrate all of the elements of constitutional standing -- e.g. ownership, injury in fact, etc. -- there would be no need or opportunity for an association to advance claims on behalf of its members in a representative capacity. The individual members would, of necessity, already each be involved in prosecuting their claims. Any such reading of Hunt ignores the Supreme Court's consistent historical endorsement of associational standing and the significant benefits it engenders.

Moreover, regarding the specific items Google contends need to be identified for each member -- copyright ownership and registration -- Google stands the Hunt test on its head. The central issue before this Court is not which individual photographer or artist owns a particular work that Google has copied, but that Google has made wholesale copies of works that it indisputably does not own. The common question that must be resolved and requires limited or no individualized proof is whether Google's flagrant copying and use of works it concededly does not own was, and is, unlawful. National Ass'n of Letter Carriers, 604 F. Supp. 2d at 672 (Chin, J.) ("In other words, while the USPS could assert individualized circumstances on a case-by-case basis to argue that the exceptions apply, individualized inquiry is not required to resolve the broader legal question of whether OIG has the legal authority to ask for the information in the first place.").

## F.   THE PRINCIPAL CASES GOOGLE RELIES UPON MISINTERPRET THE *HUNT* TEST AND/OR ARE DISTINGUISHABLE.

### 1.   The *Association For Information Media And Equipment* Case

The primary case upon which Google relies, Ass'n for Information Media & Equip. v. Regents of the Univ. of Cal., No. CV 10-9378 CBM (MANx) (C.D. Cal. Oct. 3, 2011) ("AIME"),

misinterprets and misapplies the <u>Hunt</u> test.  Unfortunately, it appears that the flawed analysis of this 2011 Central District of California decision was the impetus for Google's motion here, after having failed to challenge the propriety of associational standing for over six (6) years.  The <u>AIME</u> decision, not surprisingly given Google's reliance thereupon, also confuses and conflates the first and third prongs of the <u>Hunt</u> test.  Google incorrectly and misleadingly represents that the Court in <u>AIME</u> held that the first and second prongs of the <u>Hunt</u> test were satisfied. Def. Mem. at 7.  As a plain reading of the decision verifies, the Court made no such findings but instead simply recited the arguments of the parties without directly addressing their merits.  <u>AIME</u> at 6.  Indeed, the Court's failure to separately and distinctly analyze the three <u>Hunt</u> prongs led to its defective conclusion that the association before it lacked standing.

In addressing the parties' arguments as to associational standing, the <u>AIME</u> Court stated, immediately prior to holding that the associational plaintiff had failed to satisfy prong three, that "[d]efendants specifically argue that for *AIME's members to have standing, they would have to own the necessary copyrights to the works at issue,* which AIME has failed to allege, and this necessarily means that *the individual members would have to be involved in the lawsuit.*" <u>Id.</u> (emphasis supplied).  This argument, which the Court accepts and relies upon in reaching its holding, blatantly conflates the first and third prongs.  Again, the first prong concerns individual ownership and constitutional standing and is satisfied where it is alleged that <u>one</u> member has such independent standing.  <u>See</u> *supra* at 6-7.  In contrast, the third prong is concerned with determining whether the participation of each individual member is necessary given the remedy sought.  <u>See</u> *supra* at 9-10. The Court's acceptance of defendants' flawed argument, which transposed threshold individual standing requirements onto prong three, led it to its incorrect holding that "[i]n order to establish a claim for copyright

infringement, individual copyright owners' participation is necessary.  This is because having the

rights over a copyright is essential to establishing a copyright infringement claim."  <u>AIME</u> at 7.[5] [6]

Finally, Google concludes its discussion of <u>AIME</u> with the assertion that "[a]ny injunctive or

declaratory relief ordered in a copyright case can extend only to the plaintiffs' particular works, not

to copyrighted works generally."  Def. Mem. at 8.  First, the declaratory and injunctive relief sought

in the Complaint is so limited.  The Associational Plaintiffs are only seeking such prospective relief

on behalf of their members who are otherwise class members, <u>i.e.</u>, plaintiffs defined as "persons and

entities that own the copyright and/or relevant exclusive rights in an original Visual Work . . . ."

Compl. at ¶¶ 44, 82, 85.  Further, Google is simply wrong that such prospective relief must be

limited to those plaintiffs before a Court in a copyright action.  Courts routinely order much broader

equitable relief in copyright infringement cases.  <u>Music v. Heiman</u>, No. 09-cv-341-bbc, 2010 WL

1904341, *5-*6 (W.D. Wis. May 11, 2010) (granting broad injunction covering all copyrighted works

in industry association's repertory, even though association no plaintiff and case no class action; "the

majority of courts that have decided cases similar to this one have found that the broader injunction

covering all ASCAP music is appropriate in cases in which the copyright infringer has demonstrated

his unwillingness to obtain a license"); <u>EMI April Music Inc. v. Jet Rumeurs, Inc.</u>, 632 F. Supp. 2d

619, 624 (N.D. Tex. 2008) (in copyright infringement case, "recogniz[ing], as other courts have, that

the Plaintiffs here represent the interests of all [non-party industry association] members whose

---

[5] Plaintiffs in <u>AIME</u> have, with that Court's leave, filed an amended complaint.  Defendants there have, in turn, filed a new motion to dismiss, including as to the associational standing issue.  This motion has been fully briefed and is, to our knowledge, <u>sub judice</u>.  <u>See</u> Notice of Motion and Motion to Dismiss Case (Docket No. 43), <u>AIME</u>, No. 10-9378 (C.D. Cal. filed Nov. 23, 2011); Memorandum in Opposition to Motion to Dismiss Case (Docket No. 44), <u>AIME</u>, No. 10-9378 (C.D. Cal. filed Dec. 21, 2011); Reply in Support of Motion to Dismiss Case (Docket No. 45), <u>AIME</u>, No. 10-9378 (C.D. Cal. filed Jan. 17, 2012).

[6] Indeed, the additional cases Google relies upon in addressing the <u>AIME</u> decision serve to highlight this inherent flaw in Google's position.  Def. Mem. at 8.  Both <u>K-Beech, Inc. v. Does 1-29</u>, No. CV 11-3331(JTB)(ETB), 2011 WL 4401933 (E.D.N.Y. Sept. 19, 2011), and <u>Franklin Elec. Publishers, Inc. v. Unisonic Prods. Corp.</u>, 763 F. Supp. 1 (S.D.N.Y. 1991), address the standing of individual plaintiffs in copyright infringement actions.  They do not address representative associational standing.  Google's misplaced reliance on them emphasizes Google's mistake in confusing the first prong issues of threshold constitutional standing (satisfied by allegations as to one member with such standing) with the third prong prudential concerns regarding administration of the remedy sought.

music could be infringed by Defendants, and therefore finds that injunctive relief which protects all music in the [association] reparatory is appropriate").[7]

Finally, this Court could readily order injunctive relief that does not require the participation of individual association members -- i.e., an injunction placing the burden on Google to refrain from copying and exploiting works as to which it concededly has no ownership rights. The burden here is -- and should be -- on the infringer, Google, to conduct itself in a lawful manner and not trample on individual ownership interests en masse. Triad Sys. Corp. v. Se. Express Co., 64 F.3d 1330, 1337 (9th Cir. 1995), *superseded in part on other grounds by statute*, 17 U.S.C. § 117(c) ("the injunction properly requires [defendant] to determine which customers own their software under Regime 1 [software not infringed], and which are mere licensees under Regimes 2 and 3 [software infringed]. Putting this burden on [defendant] is appropriate because [defendant] is the infringer."); Goto.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1211 (9th Cir. 2000), *vacated in part on other grounds*, 555 U.S. 7 (2008) (same); Columbia Pictures Indus., Inc. v. Fung, No. CV 06-5578 SVW (JCx), 2010 U.S. Dist. LEXIS 91169, *19 (C.D. Cal. May 20, 2010) (same). The burden is surely not on plaintiffs to identify each of the more than 12 million books and corresponding images that Google has brazenly copied and used without permission.

---

[7] See also Controversy Music v. Down Under Pub Tyler, Inc., 488 F. Supp. 2d 572, 578 (E.D. Tex. 2007) (same); EMI April Music Inc. v. Know Group, LLC, No. 3:05-CV-1870-M, 2006 WL 3203276, *4 (N.D. Tex. Nov. 6, 2006) (same); JMV Music, Inc. v. Cochran, No. 00-4094-SAC, 2000 WL 1863478, *2 (D. Kan. Nov. 16, 2000) (same); All Nations Music v. Christian Family Network, Inc., 989 F. Supp. 863, 869 (W.D. Mich. 1997) (same); Canopy Music Inc. v. Harbor Cities Broad., Inc., 950 F. Supp. 913, 916 (E.D. Wis. 1997) (same); cf. Apple Inc. v. Psystar Corp., 673 F. Supp. 2d 943, 953 (N.D. Cal. 2009) ("an injunctive decree can reach beyond the four corners of the litigated copyrighted works to cover non-litigated items of similar character"); Princeton Univ. Press v. Mich. Document Servs., 99 F.3d 1381, 1392 (6th Cir. 1996) ("The weight of authority supports the extension of injunctive relief to future works."); Warner Bros. Entm't Inc. v. Carsagno, No. 06 CV 2676(NG)(RLM), 2007 WL 1655666, *5 (E.D.N.Y. June 4, 2007) (same, citing extensive authority); Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146, 1154 n.1 (9th Cir. 2007) ("[T]he Copyright Act gives courts broad authority to issue injunctive relief. See 17 U.S.C. § 502(a). Once a court has jurisdiction over an action for copyright infringement under section 411, the court may grant injunctive relief to restrain infringement of any copyright, whether registered or unregistered."); Olan Mills, Inc. v. Linn Photo Co., 23 F.3d 1345, 1349 (8th Cir. 1994) (same).

2.    **The *National Association of Freelance Photographers* Case**

The second of the two principal cases Google relies upon, Nat'l Ass'n of Freelance Photographers v. Associated Press, No. 97 Civ. 2267(DLC), 1997 WL 759456 (S.D.N.Y. Dec. 10, 1997) ("NAFP"), is also readily distinguishable from the one at bar.  There, three individual freelance photographers and the association of which they were members commenced an action claiming that the Associated Press ("AP") used copyrighted photographs without permission.  Id. at *1-*2.  The central issue for determination was whether the photographers had transferred their copyrights in the photos to the AP pursuant to a legend on checks endorsed by the photographers.  Id.  The Court ruled that this issue of copyright transference required the participation of individual association members in order to determine the parties' "prior understandings or course of dealing with AP, specific side-agreements that may govern a given transaction, or particular instances of misperception, miscommunication, or fraud by either party."  Id. at *5.

NAFP differs from the case at bar on a numbers of fronts.  First, in NAFP, the AP asserted that it was the rightful owner of the photos at issue.  Google does not and cannot make any such claim here.  Quite to the contrary, Google blithely admits that it has copied and used works not belonging to it.  Affidavit of Daniel Clancy, Engineering Director of Google Book Search, sworn to February 11, 2010, The Author's Guild v. Google, Inc., No. 05 CV 8136 (S.D.N.Y. filed Sept. 20, 2005) (Doc. No. 946), at ¶¶ 4-5 ("Clancy Aff.").  Likewise, the sort of subjective, individualized defense asserted by the AP in NAFP is not present here.  Google does not assert that any visual artists transferred their copyrights in the works Google has copied from library collections, and there is no need nor opportunity for this Court to delve into individualized courses of dealing and agreements, as there was in NAFP.  Indeed, the Court in NAFP was careful to point out that "plaintiffs are not challenging the enforceability of the check legend on its face or standing alone." NAFP at *5.  By so noting, the Court implied that the association may have had standing with

respect to such a facial challenge divorced from the unique circumstances surrounding each transfer, and, most important, that each member of the association was <u>not</u> required to offer individual proof as to threshold copyright ownership.[8]

### G.    THE CASES GOOGLE ATTEMPTS TO DISTINGUISH SHOW THAT ASSOCIATIONAL STANDING EXISTS HERE.

At page 10 of its Memorandum, in a series of brief bullet points, Google attempts to distinguish cases, in which, as Google phrases it, "courts have purported to permit associational standing in copyright cases." However, far from effectively distinguishing these cases, Google's arguments actually establish the existence of associational standing here.

The first case Google addresses, <u>Itar-Tass Russian News Agency v. Russian Kurier, Inc.</u>, No. 95 Civ. 2144(JGK), 1997 WL 109481 (S.D.N.Y. Mar. 10, 1997), *rev'd in part*, 153 F.3d 82 (2d Cir. 1998), is the most pertinent to this Court's analysis. There, a number of individual Russian journalists and publishers, a Russian news agency, and an association of Russian journalists, The Union of Journalists of Russia ("UJR"), brought claims of copyright infringement for defendants' blatant copying of news articles and reports without authorization and publishing them in its own newspaper in the United States. <u>Id.</u> at *1. As part of its analysis, the <u>Itar-Tass</u> Court emphasized that "[a]lthough [defendant] published more than 500 articles that had been first published elsewhere, [defendant] testified that he had obtained the author's permission in only about six cases." <u>Id.</u> at *4. Here, Google has admittedly copied in excess of 12 million books and photos and

---

[8] Further, in <u>NAFP</u> the breadth of the relief sought was different than here. There, the association sought relief "generally on behalf of 'professional Freelance Photographers' who 'have been 'covering' events pursuant to a specific assignment or some other agreement with the AP or a Member.'" <u>NAFP</u> at *4. In contrast, and as stated above, the relief sought in this Action is only on behalf of association members who are also class members. <u>See</u> *supra* at 14.

images on the same order of magnitude, with no permission whatsoever. Clancy Aff., *supra* at 16. The facts of <u>Itar-Tass</u> are on all four with those here.[9]

The <u>Itar-Tass</u> Court found that UJR (the associational plaintiff) had standing to advance copyright infringement claims on behalf of its members. <u>Itar-Tass</u>, 1997 WL 109481 at *10-*11. In doing so, it did not hold that each individual member of the association was required to establish copyright ownership and infringement to satisfy the <u>Hunt</u> test. Instead, it analyzed these threshold individual standing requirements -- as it should have -- under the first prong of <u>Hunt</u>, and concluded that "UJR meets that first requirement because some members of the UJR had their work republished by defendants without their permission . . . As explained above, these authors have standing to enforce their copyrights." <u>Id.</u> at *11. The Court went further and found that the <u>Hunt</u> test was satisfied, even though the individual association members were not even identified. <u>Id.</u>; <u>see also</u> <u>Building & Trades Council</u>, 448 F.3d at 145 ("But the defendants cite to no authority – nor are we aware of any – that supports the proposition that an association must 'name names' in a complaint in order properly to allege injury in fact to its members.").

Google purports to distinguish this case on the ground that, quoting from <u>Itar-Tass</u>, "'this lawsuit has been litigated' through discovery and a bench trial 'without the need for the participation of UJR's members[.]'" Def. Mem. at 10 (quoting <u>Itar-Tass</u>, 1997 WL 10948 at *11). But this is precisely the point. Far from distinguishing <u>Itar-Tass</u>, these facts wholly support the Associational Plaintiffs' position. The very fact that the copyright infringement claims in <u>Itar-Tass</u> were litigated through discovery and a bench trial demonstrates that such claims can be litigated, including by an associational plaintiff, <u>without</u> individual association member participation to establish copyright ownership and registration. According to Google, a copyright infringement claim could never

---

[9] Indeed, the facts of <u>Itar-Tass</u> are far more analogous to those here than the facts of <u>NAFP</u>, the decision of this Court that Google primarily relies upon. <u>Itar-Tass</u> concerns a straightforward case of copyright infringement, as here, without any of the subjective elements of individual copyright transfers found in <u>NAFP</u>.

proceed through trial without the participation of each association member.  Itar-Tass shows that Google is wrong.

On appeal, the Second Circuit endorsed this Court's holding and affirmed that UJR had standing.  Itar-Tass Russian News Agency v. Russian Kurier, Inc., 153 F.3d 82, 94 (2d Cir. 1998).  Further, the Second Circuit counseled that on remand "UJR should now be given an opportunity to amend its prayer for relief to state whatever claim it might have to collect damages for the benefit of its member-authors whose rights have been infringed."  Id.  Far from concluding that UJR lacked standing, the Second Circuit suggested that UJR might be able to collect damages on behalf of its members -- relief not usually afforded to associational plaintiffs -- all without the need for individual member participation.  Under the plain and controlling authority in this Circuit, Google's challenge must be rejected.

The second case that Google attempts to distinguish away tends to the same conclusion.  Google attempts to distinguish Olan Mills, Inc. v. Linn Photo Co., 795 F. Supp. 1423 (N.D. Iowa 1991), rev'd, 23 F.3d 1345 (8th Cir. 1994), by contending that the Court there held that the association had standing "without analysis."  Def. Mem. at 10.  In fact, the Court devoted two pages of its decision to analyzing the issue of associational standing.  Olan Mills, 795 F. Supp. at 1427-28.  And again, as in Itar-Tass, that Court held that the association had standing without even suggesting that each individual member would have to participate to establish threshold individual standing issues.  In fact, the Olan Mills Court concluded that inferences that could be drawn from the complaint's allegations as to the standing of individual members were sufficient to defeat defendants' standing challenge upon a motion to dismiss.  Id. at 1428.[10]

---

[10] See also CBS Broadcasting, Inc. v. Echostar Communications Corp., 450 F.3d 505, 517, n.25 (11th Cir. 2006) (affirming District Court's decision that association possessed standing under Hunt test in copyright infringement case); In re Literary Works in Elec. Databases Copyright Litig., 654 F.3d 242, 252 (2d Cir. 2011) (associational plaintiffs prosecuted copyright infringement case without standing challenge through one decision by Supreme Court and two by Second Circuit).

## H.   GOOGLE'S FAIR USE ARGUMENT IS ENTIRELY
##      IRRELEVANT UPON THIS MOTION TO DISMISS.

Google next posits that because it will likely raise a defense of fair use, which it contends will require the individual participation of association members, the associations lack standing here. Google is mistaken for a host of reasons.

First, Google offers no authority for the proposition that a defendant's affirmative defense -- including the defense of fair use -- can or should have any bearing upon the threshold issue of standing.  The Hunt analysis and standing analysis generally are confined to determining whether the relief sought by a plaintiff is such that standing can be conferred.  Nat'l Ass'n of Letter Carriers, 604 F. Supp. 2d at 672 (Chin, J.) ("the exceptions are more appropriately analyzed when considering the merits of the claim, not when considering the issue of plaintiffs' standing."); In re Senior Cottages of Am., LLC, 482 F.3d 997, 1004 (8th Cir. 2007) (existence of affirmative defense does not impact analysis on question of standing); Oregon v. Heavy Vehicle Elec. License Plate, Inc., 157 F. Supp. 2d 1158, 1169 n.16 (D. Ore. 2001) (same).

This result is in no way surprising, given that it is Google's indisputable burden to develop and propound evidence to support its affirmative defense of fair use.  Infinity Broad. Corp. v. Kirkwood, 150 F.3d 104, 107 (2d Cir. 1998) ("Since fair use in an affirmative defense to a claim of infringement, the burden of proof is on its proponent.") (citing Campbell v. Acuff-Rose Music Inc., 510 U.S. 569, 590 (1994)); Am. Geophysical Union v. Texaco, Inc., 60 F.3d 913, 918 (2nd Cir. 1994) (same); Bateman v. Mnemonics, Inc., 79 F.3d 1532, 1542 n.22 (11th Cir. 1996) ("it is clear the burden of proving fair use is always on the putative infringer"); 4 Patry on Copyright § 10:9.50 (2011) (same).  Plaintiffs here, including the Associational Plaintiffs, are not required to develop or propound any evidence on this point, whether particularized as to each association member or not. It is plaintiffs' procedural prerogative to simply sit back and demonstrate (either at trial or summary judgment) that the evidence adduced by Google is insufficient as a matter of law to prove fair use.

No participation by individual association members is, or can be, required.[11]

Turning to Google's discussion of the elements of the fair use defense (which is entirely superfluous for reasons set forth above), Google itself contends that the first and third factors can be addressed absent the need for individual member participation.[12]  Def. Mem. at 12.  Google only maintains that the second and fourth factors would require such proof.  However, as to the second factor -- "the nature of the copyrighted work" -- Courts, as they must, presume that photographs, illustrations, and graphic art stand at the core of protectable works.  Baraban v. Time Warner, Inc., No. 99 Civ. 1569(JSM), 2000 WL 358375, *4 (S.D.N.Y. Apr. 6, 2000) ("Although photographs are often 'factual or informational in nature,' the art of photography has generally been deemed sufficiently creative to make the second fair use factor weigh in favor of photographer-plaintiffs.") (citation omitted); The Bridgeman Art Library, Ltd. v. Corel Corp., 36 F. Supp. 2d 191, 196 (S.D.N.Y. 1999) ("there is broad scope for copyright in photographs because 'a very modest expression of personality will constitute sufficient originality.'") (citation omitted); Psihoyos v. Nat'l

---

[11] Furthermore, Google's affirmative defense of fair use wholly implicates the merits of this dispute.  It is unquestionable that upon this motion to dismiss the facts as alleged in the Complaint have to be accepted as true and all inferences drawn in favor of plaintiffs, including with respect to any merits-based defense.  M. Shanken Comm'ns, Inc. v. Cigar500.com, No. 07 Civ. 7371(JGK), 2008 WL 2696168, *10 (S.D.N.Y. July 7, 2008) (rejecting fair use defense as inappropriately raising factual issues on motion to dismiss).  Hence, the fact of infringement and inapplicability of a fair use defense must be assumed at this stage, simply because plaintiffs have pleaded infringement.  Compl. at ¶¶ 56-67.  There is certainly no authority for the contrary proposition that this Court should assume the validity of Google's primary defense at this stage and assume plaintiffs will have to introduce particularized evidence to meet it.

[12] Google's argument as to the first factor is that its use is so "highly transformative" that this Court can make a finding on the first factor of the fair use test without the need for individualized evidence.  Google relies on two cases to make this "transformative" argument as to photos -- Perfect 10, 508 F.3d at 1169-70, and Kelly v. Arriba Soft Corp., 336 F.3d 811 (9th Cir. 2003) -- which Google contends hold that the act of "rendering searchable" photographs is sufficiently transformative to satisfy fair use.  Def. Mem. at 12, n.3.  However, those cases dealt with an Internet search engine that "crawled" websites and indexed materials already available on the Internet.  They did not deal with, as here, the intentional, willful and physical copying of copyrighted photographs in offline hardcopy library collections to affirmatively place them on the Internet and distribute them to third-parties without owner consent.  Further, Google Books simply does not render photographs or images searchable, as an Internet search engine does.  A search for "pictures of flowers" on Google Books does not lead the user to pictures of flowers, but books containing this phrase.  Google Books does not allow for image-based searches, and, as a result, Perfect 10 and Kelly are inapposite.  Contrary to Google's assertion, Google Books is simply not transformative as to images.  Further, Google entirely ignores the third factor -- "the amount and substantiality of the portion used in relation to the copyrighted work as a whole."  It does so because it has admitted copying the entire work in each case, and cannot contest that this factor weighs heavily in plaintiffs' favor.

Exam'r, No. 97 Civ. 7624(JSM), 1998 WL 336655, *3 (S.D.N.Y. June 22, 1998) ("This Court has found a photograph to be a creative work even when it was taken for an informational purpose and displayed little artistic quality."); Bouchat v. Baltimore Ravens Ltd. P'ship, 619 F.3d 301, 311 (4th Cir. 2010) ("The copyrighted work here is a creative drawing, and '[c]reative works . . . are closer to the core of works protected by the Copyright Act.'") (quotation and citation omitted).  In addition, copyright registration is prima facie evidence of originality.  Yurman Studio, Inc. v. Castaneda, 591 F. Supp. 2d 471, 484 (S.D.N.Y. 2008); Yurman Design, Inc. v. Golden Treasure Imports, Inc., 275 F. Supp. 2d 506, 514 (S.D.N.Y. 2003).

As to the fourth factor, addressing market harm, where the infringer is using the infringed work for commercial gain (as plaintiffs allege Google is here, Compl. at ¶¶ 60-64), there is a presumption of market harm.  Campbell, 510 U.S. at 590 (presumption of market harm, where (as here) complete duplication for commercial purposes); Robinson v. Random House, Inc., 877 F. Supp. 830, 843 (S.D.N.Y. 1995) (same); Itar-Tass Russian News Agency v. Russian Kurier, Inc., 886 F. Supp. 1120, 1130 (S.D.N.Y. 1995) (same); Leadsinger, Inc. v. BMG Music Publ'g, 512 F.3d 522, 531 (9th Cir. 2008) ("We have, however, concluded that [defendant's] use is intended for commercial gain, and it is well accepted that when 'the intended use is for commercial gain,' the likelihood of market harm 'may be presumed.'") (citation omitted).  Further, "the Second Circuit has previously emphasized that it is the 'potential market' for the copyrighted work and its derivatives that must be examined, even if the 'author has disavowed any intention to publish them during his lifetime,' given that an author 'has the right to change his mind' and is 'entitled to protect his *opportunity* to sell his [derivative works].'" J.D. Salinger v. Colting, 641 F. Supp. 2d 250, 268 (S.D.N.Y. 2009), *vacated on other grounds*, 607 F.3d 68 (2d Cir. 2010) (citation omitted).

Finally, while Google is correct to maintain that the fair use inquiry is a factual one (and the cases cited at pages 11 through 12 of its Memorandum do no more than recite this), this does not

mean that the Court must separately analyze each work, any more than Google did when it copied

them without discrimination.  Courts often engage in a general, categorical fair use analysis where

defendant's conduct is pervasive, as here.  See, e.g., UMG Recordings, Inc. v. MP3.com, Inc., 92 F.

Supp. 2d 349, 350-52 (S.D.N.Y. 2000) (rejecting fair use defense after applying factors to entire

website (and not individual CDs or songs) that permitted users to download "tens of thousands of

popular CDs" without permission); A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1015-19

(9th Cir. 2001) (same).  Further, Congress intended that Courts be "free to adapt the doctrine to

particular situations on a case-by-case basis."  H.R. REP. NO. 94-1476 (1976).

## I.   GOOGLE'S DISCUSSION OF THE PARTNER PROGRAM IS ALSO ENTIRELY IRRELEVANT UPON THIS MOTION TO DISMISS.

Google's final argument is that plaintiffs' allegations regarding the Partner Program

necessitate the participation of individual association members in this litigation.  Once again, Google

is in error.

First, this argument is entirely based upon supposition.  Google assumes, at the pleading

stage, factual disputes regarding licensing that implicate all members of the associations.  However,

Google offers no proof as to any actual factual dispute.  Its hypothetical argument, advanced at the

pleading stage and before any discovery has taken place in this litigation, is misplaced and untimely.

Next, as in the case of its fair use defense, Google must establish valid licenses to the

particular copyrighted works at issue.  The burden is on the alleged infringer to establish permission

for its use and that it is not infringing.  Graham Hanson Design LLC v. 511 9th LLC, No. 10 Civ.

5493(KMW), 2011 WL 744801, *4 (S.D.N.Y. Feb. 24, 2011) ("The existence of a license is a defense

to a copyright infringement claim . . . Where the dispute turns on whether a license is held by the

accused infringer, the defendant bears the burden to come forward with evidence of a license.")

(internal citations and quotations omitted); 2 Patry on Copyright § 5:118 (2011) (same).  Indeed,

Google represents that it is already in possession of this information, as it recites the particular

publisher upon whose permission it is allegedly relying on each page it displays on its website pursuant to the Partner Program. See, e.g., Am. Compl. at Ex. B.   Once again, participation by the individual association members is not necessary.   At most, merely limited participation in rebuttal by some members may be required.   However, such limited participation is not precluded under the Hunt test.   See supra at 9-10 (cases establishing limited participation allowable; Hunt test only violated where participation of each member required).[13]

Finally, the Partner Program allegations are relevant to just one limited segment of plaintiffs' infringement claims.   In an attempt to advance its argument, Google ignores plaintiffs' core claims regarding the Library Project -- that Google's wholesale scanning of millions of copyrighted works in library collections equates to massive copyright infringement.   Compl. at ¶¶ 56-67.   In this final argument, Google does not contest that these core claims do not involve any issues of publisher permission, or that the Associational Plaintiffs have standing to assert these core claims on behalf of their memberships.   At minimum, the various claims could be addressed categorically.   Nat'l Ass'n Letter Carriers, 604 F. Supp. 2d at 670 (Chin, J.) (finding claims properly evaluated on categorical basis).[14]

---

[13] Moreover, the Copyright Act provides that the legal or beneficial owner of a copyright has standing to sue for infringement. 17 U.S.C. § 501(b).  A copyright owner who licenses his or her exclusive work to a publisher in exchange for royalty payments is deemed a beneficial owner that retains standing to sue.  Cortner v. Israel, 732 F.2d 267, 271 (2d Cir. 1984) ("When a composer assigns copyright title to a publisher in exchange for the payment of royalties, an equitable trust relationship is established between the two parties which gives the composer standing to sue for infringement of that copyright."); Harris v. Simon & Schuster, Inc., 646 F. Supp. 2d 622, 632 (S.D.N.Y. 2009) (same); 6 Patry on Copyright § 21.25 (2011) (same).  As a result, Google's licensing objections are of no moment.

[14] Should the Court grant Google's Motion in any respect, plaintiffs respectfully request leave to amend the Complaint and replead. Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 639 (2d Cir. 2005) (granting leave to amend jurisdictional allegations pursuant to 28 U.S.C. § 1653, noting statute "is to be construed liberally") (quotation omitted); Advani Enters., Inc. v. Underwriters at Lloyds, 140 F.3d 157, 161-62 (2d Cir. 1998) (same); Eastern Paralyzed Veterans Ass'n, Inc., 133 F. Supp. 2d at 210 (noting "leave to amend is usually granted quite freely," and granting leave to associational plaintiff to remedy Hunt-related deficiency in pleading).

IV

## CONCLUSION

For the reasons set forth above and in the remainder of the record, the Associational

Plaintiffs request that the Court deny the Motion in its entirety and grant such further relief as the

Court deems appropriate.

Dated:  New York, New York
        February 6, 2012

Respectfully submitted,

MISHCON DE REYA NEW YORK LLP

By: _____
     James J. McGuire
     Mark A. Berube
     Vincent Filardo, Jr.

200 Park Avenue, 44th Floor
New York, New York 10166
Tel: (212) 612-3270
Fax: (212) 612-3297
james.mcguire@mishcon.com
mark.berube@mishcon.com
vincent.filardo@mishcon.com

*Of Counsel:*

Ronny L. Kurzman, Esq.
1200 Avenue of the Americas, 3rd Floor
New York, New York 10036
Tel: (646) 448-9990
Fax: (954) 678-0696

*Attorneys for Lead Plaintiffs and the
Prospective Class*