UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x

THE AUTHORS GUILD et al.,                :

                    Plaintiffs,          :

         - against -                     :          **OPINION**

GOOGLE, INC.,                            :          05 Civ. 8136 (DC)
                                                    10 Civ. 2977 (DC)
                    Defendant.           :

- - - - - - - - - - - - - - - - - -x

AMERICAN SOCIETY OF MEDIA               :
PHOTOGRAPHERS et al.,                    :
                                         :
                    Plaintiffs,          :
                                         :
         - against -                     :
                                         :
GOOGLE, INC.,                            :
                                         :
                    Defendant.           :
                                         :
- - - - - - - - - - - - - - - - - -x

**CHIN, Circuit Judge:**

          Before the Court are two motions.  First, defendant

Google, Inc. ("Google") moves to dismiss the claims of the

associational plaintiffs in both of these cases.[1]  Second, the

_____

          [1]     The Authors Guild is the only associational plaintiff
in the Authors Guild action.  The associational plaintiffs in the
American Society of Media Photographers ("ASMP") action include:
ASMP, the Graphic Artists Guild, the Picture Archive Council of
America, the North American Nature Photography Association, and
Professional Photographers of America (collectively, the "ASMP
Associational Plaintiffs").

three representative plaintiffs in the Authors Guild action --
Betty Miles, Joseph Goulden, and Jim Bouton (the "AG
Representative Plaintiffs") -- move for class certification.  For
the reasons stated below, Google's motions to dismiss the claims
of the associational plaintiffs are denied, and the motion for
class certification in the Authors Guild case is granted.

**BACKGROUND**

A.   **The Library Project**

          The following facts are not in dispute.  In 2004,
Google announced that it had entered into agreements with several
major research libraries to digitally copy books and other
writings in their collections (the "Library Project").  Since
then, Google has scanned more than 12 million books.  (See Zack
Decl. Ex. 7 at 3).  It has delivered digital copies to the
participating libraries, created an electronic database of books,
and made text available for online searching.  See Authors Guild
v. Google, 770 F. Supp. 2d 666, 670 (S.D.N.Y. 2011) (citing Emily
Anne Proskine, Google's Technicolor Dreamcoat:  A Copyright
Analysis of the Google Book Search Library Project, 21 Berkeley
Tech. L.J. 213, 220-21 (2006) (describing project)).  Google
users can search its "digital library" and view excerpts --
"snippets" -- from books containing search results.  Id.  (See

-2-

<u>also</u> Zack Decl. Ex. 7 at 3).  For example, when a user enters a
search term on the Google Books website, Google displays a list
of books containing that term.  In many cases, when the user
clicks on the link to a particular book, Google displays up to
three "snippets" of text from that book -- each about an eighth
of a page -- each of which contains the search term.  (<u>See</u> Gratz
Decl. Ex. 1; Zack Decl. Exs. 7, 10-12).

     Millions of the books scanned by Google were still
under copyright, and Google did not obtain copyright
permission to scan the books.  <u>Authors Guild</u>, 770 F. Supp. 2d at
670 & n.3.

**B.**    **<u>The Authors Guild Action</u>**

     In 2005, the Authors Guild and the AG Representative
Plaintiffs (together, the "Authors Guild Plaintiffs") brought a
class action, charging Google with copyright infringement.
Specifically, the Authors Guild Plaintiffs allege that by
reproducing in-copyright books, distributing them to libraries,
and publicly displaying "snippets" of those works for search,
Google "is engaging in massive copyright infringement."  (AG 4th
AC ¶ 4).  The AG Representative Plaintiffs seek damages and
injunctive and declaratory relief.  The Authors Guild seeks only
injunctive and declaratory relief.

Also in 2005, several publishers initiated their own action.  They are not parties to the instant motions.

The Authors Guild Plaintiffs, the publishers, and Google engaged in document discovery and, in the fall of 2006, began settlement negotiations.  On October 28, 2008, after extended discussions, the parties filed a proposed settlement agreement.  The proposed settlement was preliminarily approved by Judge John E. Sprizzo by order entered November 17, 2008.  (ECF No. 64).  Notice of the proposed settlement triggered hundreds of objections.  As a consequence, the parties began discussing possible modifications to the proposed settlement to address at least some of the concerns raised by objectors and others.  On November 13, 2009, the parties executed an Amended Settlement Agreement ("ASA") and filed a motion for final approval of the ASA pursuant to Federal Rule of Civil Procedure 23(e).  (ECF No. 768).  I entered an order preliminarily approving the ASA on November 19, 2009.  (ECF No. 772).

Notice of the ASA was disseminated.  As was the case with the original proposed settlement, hundreds of class members objected to the ASA.  A few wrote in its favor.  The Department of Justice ("DOJ") filed a statement of interest raising certain concerns.  (ECF No. 922).  Amici curiae weighed in, both for and

-4-

against the proposed settlement.  I conducted a fairness hearing on February 18, 2010.  The Authors Guild actively participated in all these proceedings.

On March 22, 2011, I declined to grant final approval of the ASA because, inter alia, "the ASA contemplates an arrangement that exceeds what the Court may permit under Rule 23."  Authors Guild v. Google, Inc., 770 F. Supp. 2d 666, 667 (S.D.N.Y. 2011).  Specifically, I found that the ASA was "an attempt to use the class action mechanism to implement forward-looking business arrangements that go far beyond the dispute before the Court."  Id. (citation and internal quotation marks omitted).

C.    **The ASMP Action**

In 2010, several individual photographers and illustrators (the "ASMP Representative Plaintiffs") and the ASMP Associational Plaintiffs (together, the "ASMP Plaintiffs") brought another class action charging Google with copyright infringement.  The ASMP Plaintiffs represent individuals who hold copyright interests in certain photographs, illustrations, and other visual works that appear within the books that Google has copied.  They allege that Google's activity in connection with the Library Project has infringed on their copyrights as well.

-5-

(ASMP FAC ¶¶ 4-5).  The ASMP Representative Plaintiffs seek damages and injunctive and declaratory relief.  The ASMP Associational Plaintiffs seek only injunctive and declaratory relief.

D.   **Recent Procedural History**

The Authors Guild Plaintiffs filed their Fourth Amended Class Action Complaint on October 14, 2011.  (ECF No. 985).  The ASMP Plaintiffs filed their First Amended Class Action Complaint on November 18, 2011.  (ECF No. 29).  Google's principal defense in each of these actions is "fair use" under § 107 of the Copyright Act, 17 U.S.C. § 107.

On December 12, 2011, the AG Representative Plaintiffs moved for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure.  On December 22, 2011, Google moved to dismiss all associational plaintiffs for lack of standing under Rule 12(b)(1).  The Court held oral argument on both motions on May 3, 2012, and reserved decision.

**DISCUSSION**

First, I will address Google's motions to dismiss the claims of the associational plaintiffs for lack of standing. Second, I will address the motion for class certification in the Authors Guild case.

**A.   Motions to Dismiss**

    **1.   Applicable Law**

        Ordinarily, for a plaintiff to have standing, the
plaintiff must "'be himself among the injured.'"  Lujan v.
Defenders of Wildlife, 504 U.S. 555, 562 (1992) (quoting Sierra
Club v. Morton, 405 U.S. 727, 735 (1972)).  One exception to this
general rule is "associational standing."  Warth v. Seldin, 422
U.S. 490, 511 (1975) ("Even in the absence of injury to itself,
an association may have standing solely as the representative of
its members."); Nat'l Motor Freight Traffic Ass'n v. United
States, 372 U.S. 246 (1963) (per curiam).  "While the
'possibility of such representational standing . . . does not
eliminate or attenuate the constitutional requirement of a case
or controversy,' [the Second Circuit has] found that, under
certain circumstances, injury to an organization's members will
satisfy Article III and allow that organization to litigate in
federal court on their behalf."  Int'l Union, United Auto.,
Aerospace and Agric. Implement Workers of Am. v. Brock, 477 U.S.
274, 281 (1986) (quoting Warth, 422 U.S. at 511) (internal
citations omitted).

        "[A]n association has standing to bring suit on behalf
of its members when:  (a) its members would otherwise have

standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977).  The parties agree that the first two prongs of the Hunt test are satisfied here.  It is the third prong that is at issue and requires further discussion.

The third Hunt prong is not a constitutional standing requirement; it is prudential.  See United Food and Commercial Workers Union Local 751 v. Brown Grp., Inc., 517 U.S. 544, 555 (2d Cir. 1996).  "[O]nce an association has satisfied Hunt's first and second prongs assuring adversarial vigor in pursuing a claim for which member Article III standing exists, it is difficult to see a constitutional necessity for anything more." Id. at 556, 558 (holding that Congress did not exceed its authority by authorizing union to sue for violation of statute on behalf of its members).  Indeed, Hunt's third prong focuses on "matters of administrative convenience and efficiency, not on elements of a case or controversy within the meaning of the Constitution."  Id. at 555-57; Alliance for Open Soc'y Int'l,

<u>Inc. v. U.S. Agency for Int'l Dev.</u>, 651 F.3d 218, 229 (2d Cir. 2011).[2]

Nonetheless, to determine whether the third <u>Hunt</u> prong is satisfied, courts look to the degree of "individualized proof" required to assert the claim and grant the requested relief. <u>Open Soc'y</u>, 651 F.3d at 229-30.  Claims for which damages are sought, for example, often require proof of harm on an individualized basis, thereby defeating any "administrative convenience" achieved by allowing an association to sue on behalf of individual members.  <u>See</u> <u>Bano v. Union Carbide Corp.</u>, 361 F.3d 696, 714 (2d Cir. 2004) (denying standing because claims were for bodily injury and property damage and observing, "[w]e know of no Supreme Court or federal court of appeals ruling that an association has standing to pursue damages claims on behalf of its members").

By contrast, associational standing may be appropriate in cases involving pure questions of law or claims for injunctive

---

[2]    In <u>United Food</u>, the Supreme Court identified three potential purposes of the third <u>Hunt</u> prong.  The Court explained that the third prong (1) "may well promote adversarial intensity"; (2) "may guard against the hazard of litigating a case to the damages stage only to find the plaintiff lacking detailed records or the evidence necessary to show the harm with sufficient specificity"; and (3) "may hedge against any risk that the damages recovered by the association will fail to find their way into the pockets of the members on whose behalf injury is claimed."  <u>United Food</u>, 517 U.S. at 556-57.

relief in which little or no individualized proof is required. See, e.g., Brock, 477 U.S. at 287-88 (union could litigate case without participation of any member where only question was whether Secretary properly interpreted statutory provision; once legal issue resolved, amount of damages per union member could be left to state authorities); Warth, 422 U.S. at 515 (denying standing because plaintiffs sought damages, but noting that if an association seeks an injunction, "it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured"); Bldg. & Constr. Trades Council v. Downtown Dev., Inc., 448 F.3d 138, 150-51 (2d Cir. 2006) (standing where plaintiff only sought civil penalties and injunctive relief).  "[S]o long as the nature of the claim and of the relief sought does not make the individual participation of each injured party indispensable to proper resolution of the cause, the association may be an appropriate representative of its members, entitled to invoke the court's jurisdiction."  Warth, 422 U.S. at 511 (emphasis added).

Indeed, "[t]he fact that a limited amount of individual proof may be necessary does not, in itself, preclude associational standing."  Nat'l Ass'n of Coll. Bookstores, Inc. v. Cambridge Univ. Press, 990 F. Supp. 245, 249-51 (S.D.N.Y.

1997) (associational standing where some individual participation necessary to prove that transactions were "contemporaneous" for purpose of Robinson-Patman claim); see also Hosp. Council v. City of Pittsburgh, 949 F.2d 83, 89-90 (3d Cir. 1991) (associational standing where evidence from individual member hospitals would be necessary to support discrimination claim); N.Y. State Nat'l Org. of Women v. Terry, 886 F.2d 1339, 1349 (2d Cir. 1989) (associational standing where affidavits and stipulations were sufficient to provide a basis for relief).

## 2. **Application**

Here, there is no dispute that the associational plaintiffs in these two actions have satisfied the first two prongs of the Hunt test. I conclude that the third prong is satisfied here as well, and the associational plaintiffs therefore have standing. Specifically, the associations' claims of copyright infringement and requests for injunctive relief will not require the participation of each individual association member. To the extent there is any ambiguity on this issue, I resolve it in favor of the associational plaintiffs, as application of the third Hunt prong is prudential and the equities in this case weigh in favor of finding that the associations have standing.

### a.   __Individual Participation__

The associational plaintiffs assert claims of copyright infringement on behalf of their individual members.  They allege that Google engaged, and continues to engage, in the wholesale copying of books (including any images contained therein) without the consent of the copyright holders, many of whom are association members.  (See AG 4th AC ¶¶ 5-6, 18-19; ASMP FAC ¶¶ 4-5, 21).  Unlike the representative plaintiffs, the associational plaintiffs request only injunctive and declaratory relief.  They seek "an injunction barring Google from continued infringement of the copyrights of plaintiffs and the Class."  (AG 4th AC ¶ 52; ASMP FAC ¶ 82).  In addition, they seek "a judgment declaring that Google's actions are unlawful."  (AG 4th AC ¶ 55; ASMP FAC ¶ 85).  Neither the claims asserted nor the relief requested by the associational plaintiffs require a degree of individual participation that precludes associational standing under Hunt.

Limited individual participation will be necessary to establish the associations' copyright infringement claims.  To establish infringement, a plaintiff must show: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  Arista Records, LLC v. Doe 3, 604 F.3d

110, 117 (2d Cir. 2010); see Fonar Corp. v. Domenick, 105 F.3d
99, 104 (2d Cir. 1997).  The second element would not require
individual participation because it is undisputed.  Google does
not deny that it copied millions of books -- original works --
without the permission of the copyright holders.  Furthermore, it
has displayed snippets of text from those books as well as images
contained in the books, without the copyright holders'
permission.

        For those association members who still own all or part
of the copyright to their work, the first element will not
require individual participation.  Copyright ownership
information is available publicly on the United States Copyright
Office's Registry.  See www.copyright.gov/records (for books
registered since Jan. 1, 1978); see also books.google.com/googleb
ooks/copyrightsearch.html (for books registered before 1978).
Furthermore, copyright registrations constitute prima facie
evidence of copyright ownership, 17 U.S.C. § 410(c), and the
Court may take judicial notice of them, Island Software &
Computer Serv., Inc. v. Microsoft Corp., 413 F.3d 257, 261 (2d
Cir. 2005).[3]

---

        [3]    To the extent Google wishes to rebut such evidence (see
Perle Decl. ¶ 25), it may seek to do so on a case-by-case basis.

For those association members who have assigned their copyrights to a third party, but still retain a beneficial interest in their work -- e.g., by receiving royalties -- some individual participation may be required.[4]  If such beneficial ownership cannot be established through public records or Google's records, the association member arguably would have to come forward with a publishing contract or other document proving that he retains a beneficial interest in his work.[5]  This degree of individual participation, however, does not defeat associational standing.  See Coll. Bookstores, 990 F. Supp. at 249-50; Hosp. Council, 949 F.2d at 89-90.  Requiring some individual members to present documentary evidence of their beneficial copyright interest would not make this case administratively inconvenient or unmanageable.  The alternative -- forcing association members to pursue their claims individually -- would be burdensome and inefficient.

---

[4]    Individuals who receive royalties retain standing to sue for copyright infringement.  See Cortner v. Israel, 732 F.2d 267, 271 (2d Cir. 1984) (citing 17 U.S.C. § 501(b)); Harris v. Simon & Schuster, Inc., 646 F. Supp. 2d 622, 632 (S.D.N.Y. 2009).

[5]    If an association member cannot show that he retains a beneficial interest in the copyright -- for example, if he has entered into an "all rights" contract, see May 3, 2012, Oral Arg. Tr. at 16, or created the work as a "work for hire," 17 U.S.C. § 201(b) -- a substantial question will be raised as to whether he should be included in the group on behalf of which the association is suing.

Google claims that its fair-use defense would require the participation of individual association members as well. Specifically, Google contends that two fair-use factors, "the nature of the copyrighted work" and "the effect of the use upon the potential market for or value of the copyrighted work," 17 U.S.C. § 107, require an individualized inquiry. (Def.'s Br. at 12). It points out, for example, that creative works and non-creative works are often treated differently in the fair-use analysis. (Id. at 12-13). Furthermore, it argues that snippet display might, for example, affect the market for in-print books more than it affects the market for out-of-print books. (Id. at 13).

While different classes of works may require different treatment for the purposes of "fair use," the fair-use analysis does not require individual participation of association members. The differences that Google highlights may be accommodated by grouping association members and their respective works into subgroups. For example, in the Authors Guild action, the Court could create subgroups for fiction, non-fiction, poetry, and cookbooks. In the ASMP action, it could separate photographs from illustrations. The Court could effectively assess the merits of the fair-use defense with respect to each of these

categories without conducting an evaluation of each individual
work.  In light of the commonalities among large groups of works,
individualized analysis would be unnecessarily burdensome and
duplicative.  See Nat'l Ass'n of Letter Carriers, AFL-CIO v. U.S.
Postal Serv., 604 F. Supp. 2d 665, 674-76 (S.D.N.Y. 2009)
(standing not defeated by affirmative defense that may raise
individualized issues; case-by-case analysis more appropriate at
the merits stage).

        Finally, no individual participation would be required
at the relief stage.  If a certain group of association members
establishes infringement, and Google fails to prevail on its
fair-use defense with respect to that group, the Court could
simply enjoin Google from displaying snippets of those
association members' works.  As the associational plaintiffs only
seek injunctive relief, no individual damage assessment would be
necessary.  See Bldg. & Constr. Trades Council, 448 F.3d at 150.

        **b.   Equitable Considerations**

        Even if there were room for disagreement over whether
the third Hunt prong has been met in this case, associational
standing would still be appropriate.  As noted above, the third
Hunt prong is not an Article III standing requirement; it is
prudential.  Therefore, this Court has a certain degree of

discretion in granting associational standing where, as is undisputedly the case here, the first two prongs are met.

The Supreme Court has acknowledged that associational standing confers certain advantages on individual members and the judicial system as a whole.  Specifically, an association "can draw upon a pre-existing reservoir of expertise and capital" that its individual members lack.  Brock, 477 U.S. at 289. Furthermore, its participation assures "'concrete adverseness'" and "'sharpens the presentation of issues upon which the court so largely depends for illumination of difficult . . . questions.'" Id. (quoting Harlem Valley Transp. Ass'n v. Stafford, 360 F. Supp. 1057, 1065 (S.D.N.Y. 1973)).

Indeed, the Authors Guild has played an integral part in every stage of this litigation since its inception almost seven years ago.  It spent several of those years negotiating with Google on behalf of its members.  Only when it became apparent, in 2011, that no settlement would be achieved did Google object to the Authors Guild's participation in the litigation.  While the ASMP Associational Plaintiffs have not litigated against Google for as many years as the Authors Guild, their participation nonetheless confers the important benefits articulated in Brock.

-17-

Furthermore, given the sweeping and undiscriminating nature of Google's unauthorized copying, it would be unjust to require that each affected association member litigate his claim individually.  When Google copied works, it did not conduct an inquiry into the copyright ownership of each work; nor did it conduct an individualized evaluation as to whether posting "snippets" of a particular work would constitute "fair use."  It copied and made search results available <u>en masse</u>.  Google cannot now turn the tables and ask the Court to require each copyright holder to come forward individually and assert rights in a separate action.  Because Google treated the copyright holders as a group, the copyright holders should be able to litigate on a group basis.

**B.**   <u>**Motion for Class Certification**</u>

1.   <u>**Applicable Law**</u>

A plaintiff seeking class certification must meet the prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure -- numerosity, commonality, typicality, and adequacy of representation.  <u>See</u> Fed. R. Civ. P. 23.  If the prerequisites of Rule 23(a) are met, the court then must determine whether the putative class can be certified and maintained under any one of the three subsections of Rule 23(b).  <u>In re Literary Works In</u>

Elec. Databases Copyright Litig., 654 F.3d 242, 249 (2d Cir. 2011).  Here, plaintiffs seek class certification pursuant to subsection (b)(3) of Rule 23.

The party seeking class certification bears the burden of showing, by a preponderance of the evidence, that the requirements of Rule 23 are met.  Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., 546 F.3d 196, 201-04 (2d Cir. 2008).  The Second Circuit has clarified the standards governing adjudication of a motion for class certification:

> (1) a district judge may certify a class only after making determinations that each of the Rule 23 requirements has been met; (2) such determinations can be made only if the judge resolves factual disputes relevant to each Rule 23 requirement and finds that whatever underlying facts are relevant to a particular Rule 23 requirement have been established and is persuaded to rule, based on the relevant facts and the applicable legal standard, that the requirement is met; (3) the obligation to make such determinations is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement . . . .

In re Initial Pub. Offerings Sec. Litig., 471 F.3d 24, 41 (2d Cir. 2006).

### a.   Rule 23(a) Prerequisites

#### i.   Numerosity

Rule 23(a)(1) requires the putative class to be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Numerosity can be presumed if the class comprises at least forty members.  <u>Consol. Rail Corp. v. Town of Hyde Park</u>, 47 F.3d 473, 483 (2d Cir. 1995).  Courts do not require "evidence of exact class size or identity of class members."  <u>Robidoux v. Celani</u>, 987 F.2d 931, 935 (2d Cir. 1993).  If there is any dispute as to the size of the proposed class, however, the court must resolve it and make a finding as to the approximate size.  <u>See</u> <u>In re IPO Sec. Litig.</u>, 471 F.3d at 41.

#### ii.   Commonality

Under Rule 23(a)(2), there must be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  The Rule does not require all questions of law or fact to be common. Indeed, even a single common question will suffice.  <u>Wal-Mart Stores, Inc. v. Dukes</u>, 131 S. Ct. 2541, 2556 (2011) (citations and internal quotation marks omitted); <u>Marisol A. v. Giuliani</u>, 126 F.3d 372, 376 (2d Cir. 1997) ("The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact.").

Commonality requires that the class members have
"suffered the same injury," <u>Gen. Tel. Co. of Southwest v. Falcon</u>,
457 U.S. 147, 157 (1982), and that their claims depend on "a
common contention," <u>Wal-Mart</u>, 131 S. Ct. at 2551.  "That common
contention, moreover, must be of such a nature that it is capable
of classwide resolution -- which means that determination of its
truth or falsity will resolve an issue that is central to the
validity of each one of the claims in one stroke."  <u>Id.</u>
Therefore, what matters is "'the capacity of a classwide
proceeding to generate common <u>answers</u> apt to drive the resolution
of the litigation.'"  <u>Id.</u> (emphasis in original) (quoting Richard
A. Nagareda, <u>Class Certification in the Age of Aggregate Proof</u>,
84 N.Y.U. L. Rev. 97, 132 (2009)).

Importantly, Rule 23(a)(2) does not require that the
claims of the lead plaintiffs "be identical to those of all other
plaintiffs." <u>Lapin v. Goldman Sachs & Co.</u>, 254 F.R.D. 168, 176
(S.D.N.Y. 2008).  Indeed, "'factual differences in the claims of
the class do not preclude a finding of commonality.'"  <u>Newman v.
RCN Telecom Servs., Inc.</u>, 238 F.R.D. 57, 73 (S.D.N.Y. 2006)
(quoting 5 <u>Moore's Federal Practice</u> § 23.23[2]).  Commonality may
be found where the plaintiffs' alleged injuries "derive from a

unitary course of conduct by a single system." <u>Marisol A.</u>, 126 F.3d at 377.

### iii. <u>Typicality</u>

The commonality and typicality requirements of Rule 23(a) tend to merge such that similar considerations inform the analysis for both prerequisites. <u>Wal-Mart</u>, 131 S. Ct. at 2551 n.5; <u>Marisol A.</u>, 126 F.3d at 376. Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of [those] of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." <u>Robinson v. Metro-North Commuter R.R. Co.</u>, 267 F.3d 147, 155 (2d Cir. 2001) (quoting <u>Marisol A.</u>, 126 F.3d at 376) (internal quotation marks omitted); <u>see</u> <u>In re Flag Telecom Holdings, Ltd. Sec. Litig.</u>, 574 F.3d 29, 35 (2d Cir. 2009) (quoting <u>Robidoux</u>, 987 F.2d at 936). "[M]inor variations in the fact patterns underlying [the] individual claims" do not preclude a finding of typicality. <u>Robidoux</u>, 987 F.2d at 936-37. By contrast, "unique defenses" that "threaten to become the focus of the litigation" may preclude such a finding. <u>Flag Telecom</u>, 574 F.3d at 40 (citation and internal quotation marks omitted).

### iv.  **Adequacy**

Finally, Rule 23(a) requires that the class
representatives will "fairly and adequately protect the interests
of the class."  Fed. R. Civ. P. 23(a)(4).  This question involves
an inquiry as to whether:  "1) plaintiff's interests are
antagonistic to the interest of other members of the class and 2)
plaintiff's attorneys are qualified, experienced and able to
conduct the litigation."  Baffa v. Donaldson, Lufkin & Jenrette
Sec. Corp., 222 F.3d 52, 60 (2d Cir. 2000).

This inquiry "serves to uncover conflicts of interest
between named parties and the class they seek to represent."
Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625 (1997).  Not
every conflict, however, precludes a finding of adequacy.  "The
conflict that will prevent a plaintiff from meeting the Rule
23(a)(4) prerequisite must be fundamental, and speculative
conflict should be disregarded at the class certification stage."
In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 145
(2d Cir. 2001) (citations and internal quotation marks omitted),
superseded on other grounds by rule, Fed. R. Civ. P. 23(g), as
stated in Attenborough v. Const. and Gen. Bldg. Laborors' Local
79, 238 F.R.D. 82, 100 (S.D.N.Y. 2006).

b.   **Rule 23(b)(3)**

A class action may be maintained under Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

The predominance requirement is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."  Myers v. Hertz Corp., 624 F.3d 537, 547 (2d Cir. 2010) (quoting Moore v. PaineWebber, Inc., 306 F.3d 1247, 1252 (2d Cir. 2002)) (internal quotation marks omitted).[6]  That an affirmative defense may arise that affects different class members differently "does not compel a finding that individual issues predominate over common ones."  In re Nassau Cnty. Strip Search

---

[6]    Rule 23(b)(3) requires that the district court determine what questions of law or fact are common to the members of the class.  Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc., 502 F.3d 91, 106 (2d Cir. 2007) (internal quotation marks and alteration omitted).

Cases, 461 F.3d 219, 225 (2d Cir. 2006) (citation and internal quotation marks omitted).

Together with the "superiority" requirement, the predominance requirement "ensures that the class will be certified only when it would 'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" Cordes, 502 F.3d at 104 (quoting Amchem Prods., 521 U.S. at 615).

## 2.   **Application**

In this case, the proposed class is defined as "[a]ll persons residing in the United States who hold a United States copyright interest in one or more Books reproduced by Google as part of its Library Project, who are either (a) natural persons who are authors of such Books or (b) natural persons, family trusts or sole proprietorships who are heirs, successors in interest or assigns of such authors." (See Notice of Mot. for Class Cert. at 2).[7]

---

[7]     A "Book" is defined as a "full-length book published in the United States in the English language and registered with the United States Copyright Office within three months after its first publication." Id.  Google's directors, officers, and employees are excluded from the class, as well as United States Government and Court personnel.  Id.

### a.   **The Rule 23(a) Requirements Are Satisfied**

Google does not dispute that the proposed class satisfies the numerosity, commonality, and typicality requirements of Rule 23(a).  Indeed, those requirements are met here.

The class meets the numerosity requirement.  The class will likely number in the thousands, at least, as Google has scanned millions of books.

The class also meets the commonality requirement. Every potential class member's alleged injury arises out of Google's "unitary course of conduct."  <u>Marisol A.</u>, 126 F.3d at 377.  Specifically, every potential class member has allegedly been injured by Google's Library Project, whereby Google, without authorization, copied books in which the class members own copyright interests.  Whether Google's actions constitute an infringement of these copyright interests and whether Google's use of "snippets" of these works constitutes "fair use" are "common questions" capable of class-wide resolution.  <u>Wal-Mart</u>, 131 S. Ct. at 2551.

Similarly, the typicality requirement is satisfied, as "each class member's claim arises from the same course of

events":  Google's copying of books pursuant to its Library

Project.  See Robinson, 267 F.3d at 155.

          Google disputes, however, whether the adequacy

requirement has been satisfied.  It argues that "most [] class

members perceive [Google's copying of their work] as a benefit."

(Def.'s Cert. Opp'n at 9).  Accordingly, it contends that there

is "a fundamental conflict between the interests the named

plaintiffs seek to advance and the interests of absent class

members," rendering the representation inadequate.  (Def.'s Cert.

Opp'n at 8).  In support of this argument, Google points to a

survey in which slightly over 500 authors (58% of those surveyed)

"approve" of Google scanning their work for search purposes, and

approximately 170 (19% of those surveyed) "feel" that they

benefit financially, or would benefit financially, from Google

scanning their books and making snippets available in search.

(Decl. of Hal Poret, Ex. 1 at 14).

          Google's argument is without merit.  The lead

plaintiffs are adequate representatives of the class.  First,

their copyright claims do not conflict in any way with the

copyright claims of the other class members.  This is not a case

where the lead plaintiffs, in pursuing their own claims, might

compromise the claims of another group of class members.[8]
Indeed, Google has not pointed to any legal or factual argument
made by the lead plaintiffs that would undermine the copyright
claim of any other class member.

Second, that some class members may prefer to leave the
alleged violation of their rights unremedied is not a basis for
finding the lead plaintiffs inadequate.  "'The court need concern
itself only with whether those members who are parties are
interested enough to be forceful advocates and with whether there
is reason to believe that a substantial portion of the class
would agree with their representatives were they given a
choice.'"  Eisen v. Carlisle and Jacquelin, 391 F.2d 555, 563 n.7
(2d Cir. 1968) (quoting Jack B. Weinstein, Revision of Procedure:
Some Problems in Class Actions, 9 Buffalo L. Rev. 433, 460
(1960)).  Accordingly, the survey results cited by Google do not
preclude a finding of adequacy.

In any case, the survey does not prove that any
individual author would not want to participate in the instant

---

[8]    To be sure, some potential class members' interests may
be different from other members' interests.  (See Letter from
Pamela Samuelson, Professor of Law and Information, UC Berkeley
School of Law (Feb. 13, 2012) (on file with the court)).  But
this fact does not undermine the overall efficacy of a class
action.  If any author feels that her interests are not aligned
with those of the other class members, she may request to be
excluded.  See Rule 23(c)(2)(B).

class action.  Importantly, the survey did not ask the respondents whether they would want to be part of a law suit through which they might recover damages.  Indeed, it is possible that some authors who "approve" of Google's actions might still choose to join the class action.  Therefore, the court cannot conclude from the survey that the representative plaintiffs' interests are in conflict with any subset of class members.

           **b.**   <u>**The Requirements of 23(b)(3) Are Met**</u>

        Finally, class certification is warranted in this case because the predominance and superiority requirements of Rule 23(b)(3) are satisfied.

           **(i)**  <u>**Predominance**</u>

        The common issues presented in this litigation predominate over any individual ones.  As discussed above, these common questions include:  (1) whether Google's actions in connection with the Library Project constituted copyright infringement; and (2) whether the affirmative defense of "fair use" applies.  These issues are largely subject to "generalized proof."  <u>See</u> <u>Cordes</u>, 502 F.3d at 107-08.  Every potential class member's claim arises out of Google's uniform, widespread practice of copying entire books without permission of the copyright holder and displaying snippets of those books for

search.  Whether this practice constitutes copyright infringement
does not depend on any individualized considerations.
Furthermore, the question of "fair use" may be evaluated on a
sub-class-wide basis.  The Court would determine whether the
defense applies to a particular type of book, obviating the need
to evaluate each book individually.  Finally, because
representative plaintiffs only ask for statutory damages, there
is no need for any individualized inquiry into the harm suffered.
See Engel v. Scully & Scully, Inc., 279 F.R.D. 117, 130 (S.D.N.Y.
2011).

Google argues -- as it did in its motions to dismiss --
that the issue of copyright ownership is not subject to
generalized proof because publishing contracts can create varying
degrees and types of ownership interests, not all of which would
permit the author to sue for infringement.  (Def.'s Cert. Opp'n
11-15).  Accordingly, to obtain relief, it may be that an author
will have to submit some documentation proving that he retains a
beneficial interest in the copyrighted work.  This "individual"
issue, however, does not predominate over the "common" ones
discussed above.[9]

---

[9]     Google also contends that many authors do not receive
royalties for "promotional" uses, and therefore have no
beneficial interest in the right to use their work for
promotional purposes.  (Def.'s Cert. Opp'n at 14).  It argues

### (ii) **Superiority**

Class action is the superior method for resolving this litigation.  It is, without question, more efficient and effective than requiring thousands of authors to sue individually.  Requiring this case to be litigated on an individual basis would risk disparate results in nearly identical suits and exponentially increase the cost of litigation.  See Cromer Fin. Ltd. v. Berger, 205 F.R.D. 113, 133 (S.D.N.Y. 2001).  Class action, by contrast, would achieve economies of time and effort, resolving common legal and factual issues "without sacrificing procedural fairness or bringing about other undesirable results."  Cordes, 502 F.3d at 104.

### **CONCLUSION**

For the reasons stated above, Google's motions to dismiss the claims of the associational plaintiffs are denied and

---

that the display of snippets "facilitates sales" and is therefore a promotional use in which these authors have no beneficial interest.  (Id.).  This argument fails as it is based on the unestablished premise that the display of snippets facilitates sales.  Furthermore, while these authors may have authorized a publisher to promote their works, they have not authorized Google to do so.

the AG Representative Plaintiffs' motion for class certification

is granted.

SO ORDERED.

Dated:     New York, New York
           May 31, 2012

DENNY CHIN
United States Circuit Judge
Sitting by Designation